Ruby F. BROOKS, Plaintiff,

v.

H.J. RUSSELL & COMPANY and
Dwight Brown, Defendants.

No. 1:98–CV–143–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 26, 1999.

Donna Crosby Sloan, Samuel Pearson Westmoreland, Blackburn Walther & Sloan, Atlanta, GA, for Ruby F. Brooks, plaintiff.

David Michael Brown, Lisa Lynn Ballentine, Tracie Y. Johnson, Smith Gambrell & Russell, Atlanta, GA, for H.J. Russell & Company, defendant.

Rodney Zell, Zell & Zell, Atlanta, GA, Dwight Brown, Brooklynn, NY, defendant pro se.

## ORDER

THRASH, District Judge.

This is an employment discrimination case. It is before the Court on the Motion for Summary Judgment [Doc. 27], filed by Defendant H.J. Russell & Co. ("Company"). For the reasons set forth below, the Court will deny the summary judgment motion with respect to the Plaintiff's Title VII claim for discrimination on the basis of sex.

## I. BACKGROUND

Plaintiff began her employment with the Company on or about April 4, 1994, as a grounds person at Etheridge Court Apartments in Atlanta, Georgia. The Plaintiff remained in that position until September, 1994, when she was transferred to Martin Luther King ("MLK") Village Apartments as a housekeeper. In October, 1996, the Plaintiff was promoted to the position of assistant administrative clerk at the MLK Village Apartments. The Plaintiff remained in that position until her employment with the Company ended on or about July 6, 1998.

Defendant Dwight Brown began his employment with the Company in January, 1994, as a Regional Property Manager. Brown was subsequently promoted to Director of Operations. Approximately two months before his termination in February, 1997, Brown was promoted to the position of Vice–President of Public and Military Housing. As a pre-condition to full-time regular employment, the Company conducted a criminal background check on Brown. No evidence from that background check provided any indication or otherwise placed the Company on notice that Brown had a criminal record or an alleged propensity to commit sexual misconduct of any kind.

On or about January 31, 1997, the Plaintiff made an internal report to the Company concerning an alleged sexual assault by Brown. The Plaintiff alleged in the internal report that in September, 1996, Brown had forced her to disrobe before a video camera and engage in oral sex. She further alleged that Brown struck her twice across the face when she refused to submit to his alleged demands and that Brown refused to allow her to leave his office space. The Plaintiff did not inform anybody at the Company of these events until January, 1997. The Company's current sexual harassment policy was adopted in November, 1994. The policy provides a mechanism for reporting alleged misconduct and informs employees that all reports of harassment will be investigated. After hearing about the Plaintiff's complaint, Joia Johnson, the Company's General Counsel, investigated the Plaintiff's allegations pursuant to the Company's sexual harassment policy. (Johnson Dep., pp. 29–32). As a result of that investigation, Brown's employment was terminated on February 24, 1997.

The Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on the alleged sexual harassment suffered at her place of employment. Subsequently, the Plaintiff filed the present seven-count Amended Complaint [Doc. 13] pursuant to (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) the Civil Rights for Women Act, 42 U.S.C. § 13981; and (3) related state law tort claims. In Count One, the Plaintiff alleges that the Company condoned Brown's discriminatory conduct through its inadequate response and handling. The Plaintiff asserts that the Company's actions and omissions constituted both sexual harassment discrimination and *quid*

*pro quo* discrimination. The Plaintiff further asserts in Count One that the Company unlawfully retaliated against the Plaintiff for pursuing remedial measures by (1) terminating her husband from employment; (2) accusing the Plaintiff of illegal drug use; (3) threatening her job; (4) insisting that she undergo a drug test; and (5) breaching an agreement with the Plaintiff and evicting her from an apartment complex owned by the Company.

In Count Two, the Plaintiff asserts a claim under the Civil Rights for Women Act, 42 U.S.C. § 13981. She alleges that Brown committed a crime of violence against her that deprived her of her civil rights. She alleges that the Company participated in the crime by permitting sexual harassment in the workplace and covering up for the male employees. In Count Three, the Plaintiff asserts a state law claim that the Company was negligent in its hiring, supervision and retention of Defendant Brown. In Counts Four and Seven, the Plaintiff asserts that the conduct of the Company and Brown constitutes intentional infliction of emotional distress to the Plaintiff. In Counts Five and Six, the Plaintiff asserts that Brown committed tortious battery and invaded her privacy in a manner that would be objectionable to a reasonable person. The Plaintiff seeks compensatory and punitive damages for violations of these civil rights and state law claims. The Company has filed a Motion for Summary Judgment with respect to the Title VII claims asserted against it.[1]

## II.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

At the summary judgment stage, the court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.1995). "Where the record taken as a whole could not lead a rationale trier of fact to find for the nonmoving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III.  DISCUSSION

In its summary judgment motion, the Company contends that the Plaintiff cannot establish a Title VII claim of sexual harassment under either the *quid pro quo* or hostile work environment theories. The Company contends that no adverse em-

---

1. The Plaintiff has abandoned the following claims against the Company: (1) unlawful retaliation claim as asserted in Count One; (2) claim under the Civil Rights for Women Act, 42 U.S.C. § 13981, as asserted in Count Two; and (3) intentional infliction of emotional distress claim as asserted in Count Four. The Court will address the remaining issues involving the Plaintiff's Title VII sexual harassment claim and the state law claim for the negligent retention and supervision of Defendant Brown.

ployment action in connection with the Plaintiff's sexual harassment claims was ever taken against the Plaintiff. With regard to the state law claims, the Company contends that no evidence exists to show that the Company knew or should have known of Brown's alleged propensity for sexual misconduct before hiring and retaining him. Absent such knowledge, the Company is not liable for the alleged sexual assault.

### A. TITLE VII SEXUAL HARASSMENT

■■■ Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Plaintiff has not shown that the Company discriminated against her because of her sex with respect to the tangible terms and conditions of her employment. Therefore, her claim is limited to a hostile environment claim. "Title VII is violated when sexual harassment is 'sufficiently severe or pervasive' to change the conditions of employment and create an offensive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). In considering hostile environment harassment, the Court must look at the totality of the circumstances including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct interfered with the employee's work performance. *Gibson v. Hickman*, 38 F.Supp.2d 1369, 1374 (M.D.Ga.1999) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■■■ It is undisputed that the alleged sexual assault and other conduct by Brown was sufficiently severe to constitute hostile environment sexual discrimination. The issue is whether the Company is vicariously liable for Brown's conduct. In two recent decisions, *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus-*

*tries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court clarified the circumstances pursuant to which an employer can be held liable for sexual harassment by a supervisor. In *Burlington Industries*, the Court summarized its holding as follows:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Industries*, 118 S.Ct. at 2270. The Court elaborated upon the affirmative defense as follows:

> While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible em-

ployment action, such as discharge, demotion, or undesirable reassignment.

*Id.* The Eleventh Circuit discussed the new rules in the recent case of *Dees v. Johnson Controls World Services, Inc.,* 168 F.3d 417, 421–22 (11th Cir.1999). The court noted that "the employer's notice of the harassment is of paramount importance; if the employer had notice of the harassment (which is required for direct liability but not required for vicarious liability), then it is liable unless it took prompt corrective action." *Id.* at 422.

Before considering this case, it is instructive to analyze the circumstances present in *Dees.* In that case, Johnson Controls World Services, Inc. ("World Services") transferred plaintiff Mashell Dees to its Fire Department in September, 1991. Dees alleged that for three years she had been subjected to continuous sexual harassment by two supervisors, Waymon Rainey and Jerry Jacobs. She also alleged claims of sexual harassment against the department's Fire Captain, Danny Stewart, and Assistant Chief, Alfred Amerson. Dees complained about the ongoing harassment to Human Resources on August 4, 1994. After making the complaint. Dees was immediately transferred to a position in the Transportation Department. After an investigation into her allegation, Jacobs and Stewart were fired and Rainey was placed on indefinite conditional employment status. In her Title VII complaint, Dees claimed that the employer, World Services, was directly liable because it knew or should have known that the Fire Department supervisors were sexually harassing employees and failed to take prompt remedial action. Dees claimed that World Services was vicariously liable because Rainey and Jacobs had been aided in accomplishing the sexual harassment by their agency relationship with World Services. The district court granted summary judgment in favor of World Services, finding that it took prompt remedial action as soon as it received notice of the sexual harassment. *Id.* at 418–21.

The Eleventh Circuit reversed. The court found that material issues of fact existed "as to whether World Services had notice of the harassing conduct prior to Dees' August 4, 1994, complaint and took no action to correct the abuse." *Id.* at 422. The court identified one allegation by Dees in which a Human Resources employee had told Dees, after the filing of Dees' complaint, that the people in the Fire Department were "up to their old tricks again" and that a similar investigation was conducted in 1991. The court identified a second allegation in which Amerson had previously complained to Human Resources on Dees' behalf of sexually harassing behavior directed towards her. Accordingly, the Eleventh Circuit concluded that "[a] jury could reasonably infer from each of these allegations that World Services knew before Dees filed her complaint in August 1994 that Fire Department supervisors were sexually harassing employees, yet failed to take any corrective action." *Id.* at 422–23.

■ In this case, the Court finds that genuine issues of material fact exist as to whether the Company is vicariously liable for Brown's alleged sexual harassment. The record reflects that the Plaintiff complained of Brown's sexual misconduct on January 31, 1997, through a written internal report. It is undisputed that the Plaintiff did not inform anybody of Brown's misconduct until January, 1997. The Company contends that it can establish as a matter of law the two-part affirmative defense: (1) it took reasonable steps both to prevent sexual harassment and to remedy the sexually harassing conduct promptly once it was brought to the Company's attention; and (2) that the Plaintiff unreasonably failed to avoid harm or utilize any remedial opportunities made available by the Company. *See Dees,* 168 F.3d at 422.

The Supreme Court has held that while an employer need not show in every instance that it had promulgated an anti-sexual harassment policy, the effective

promulgation of an anti-sexual harassment policy satisfies the first part's reasonable care standard. *Faragher*, 118 S.Ct. at 2293. The record shows that the Company's current anti-sexual harassment policy was adopted in November, 1994. The policy provides a mechanism for reporting alleged misconduct and informs employees that all reports of harassment will be investigated. Joia Johnson testified that he believed everyone in the Company was aware of the policy. (Johnson Dep. at 16). Jacquelyn Whitehead, Director of the Company's Human Resources, testified that the policy is available to every employee at her particular work site. (Whitehead Dep. at 22). The record shows that the once the Plaintiff complained to the Company of Brown's misconduct, it took immediate steps to investigate the matter under the policy and to subsequently terminate Brown's employment on February 24, 1997.

Based on these undisputed facts, the Court agrees with the Company's contention that it acted with reasonable care after she made her complaint to correct in a prompt fashion the sexual harassment endured by the Plaintiff. Nevertheless, the Court finds that genuine issues of fact exist as to whether the Company had notice before January, 1997, of Brown's sexually harassing conduct. The Plaintiff has presented extensive evidence that Brown sexually harassed other employees of the Company, that management knew or should have known about Brown's harassing behavior, and that these events occurred well before the events relating to the Plaintiff. For instance, Regina Jones testified that Brown became her supervisor in the Spring of 1995. (Doc. 30, Jones Aff. at ¶¶ 4, 5). According to Jones, Brown directed inappropriate sexual comments and gestures towards her. (*Id.* at 6, 9). She further testified that Brown often touched her in an unwelcome manner. (*Id.*). Jones testified that she reported Brown's conduct to Candace Russell in the summer of 1994. (*Id.* at 10). Jones then testified that Brown sexually harassed her in August, 1995; that she reported this

misconduct to Jerome Russell, a member of the Company's highest level of management; and that Russell referred the Plaintiff to Jacquelyn Whitehead of Human Resources. (*Id.* at 15). It is undisputed that Brown was reprimanded and removed as Jones' immediate supervisor as a result of this complaint.

Another Company employee, Andrea Randall, testified as to Brown's sexually harassing conduct. (Doc. 37, Randall Aff.). She testified that she was hired as an Office Manager in March, 1996, but was sexually harassed by Brown from the time of her initial interview. (*Id.* at ¶¶ 3–4). Randall testified that she interviewed with Brown at his hotel room and that he directed inappropriate sexual comments and gestures towards her. (*Id.* at 6). She testified that Brown continued this inappropriate behavior after she was employed at the Company. (*Id.* at 8–10). Randall testified that in 1996, she (1) requested help from Jerome Canty, a maintenance supervisor, in fending off Brown; (2) spoke with Charles Jones, one of the Company's site managers, about Brown's improper sexual comments; and (3) attempted to discuss Brown's actions with his supervisor, Valerie Calloway, by leaving several telephone messages asking Calloway to return her call. (*Id.* at 11–14). Randall testified that Charles Jones acknowledged Brown's ongoing sexual harassment of her. (*Id.* at 13). No evidence was presented showing that Brown was reprimanded with respect to his alleged conduct towards Randall.

The Court finds that a reasonable jury could infer from the extensive evidence presented by the Plaintiff that the Company knew or should have known before the alleged sexual assault and subsequent harassment that Brown was regularly engaging in sexual harassment of female employees, but did not take the proper corrective action. *See Dees,* 168 F.3d at 423; *Fall v. Indiana University Bd. of Trustees,* 12 F.Supp.2d 870, 881–883 (N.D.Ind. 1998). The Court finds that genuine is-

sues of material fact exist as to whether the Company exercised reasonable care to prevent Brown's sexually harassing behavior. Genuine issues of material fact exist, therefore, as to whether the Company is vicariously liable for Brown's misconduct. Accordingly, the Company is not entitled to summary judgment with regard to the Title VII claim.

### B. NEGLIGENT HIRING, RE-TENTION, AND SUPER-VISION OF BROWN

■■■ With regard to a claim for the negligent hiring, supervision and retention, the appropriate standard "is whether the employer knew or should have known the employee was not suited for the particular employment." *See Kemp v. Rouse–Atlanta, Inc.,* 207 Ga.App. 876, 878, 429 S.E.2d 264, 267 (1993) (citation omitted). "A cause of action for negligence against an employee may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment." *Coleman v. Housing Authority of Americus,* 191 Ga.App. 166, 170, 381 S.E.2d 303, 307 (1989) (citation omitted). "An employer may know, or in the exercise of due care have reason to know, of an employee's reputation for sexual harassment in the absence of complaints." *Id.* (citation omitted).

In this case, no evidence was presented that the Company knew or should have known that Brown had a propensity for sexual misconduct prior to hiring him. However, the Plaintiff has presented extensive evidence detailing alleged incidents of Brown's sexual misconduct while working for the Company. At a minimum, this evidence creates a genuine issue of material fact as to whether the Company knew or should have known of Brown's sexual harassment of fellow employees, but nevertheless continued his employment. Accordingly, the Company's summary judg-

ment motion should be denied as to the negligent retention claim.

### IV. CONCLUSION

For the foregoing reasons, the Company's Motion for Summary Judgment [Doc. 27] is DENIED.