[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/23/99
THOMAS K. KAHN
CLERK

No. 96-9079

D. C. Docket No. CV2:95-142

MASHELL C. DEES,

Plaintiff-Appellant,

versus

JOHNSON CONTROLS WORLD SERVICES, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Georgia

(February 23, 1999)

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

Mashell Dees appeals the district court's grant of summary judgment in favor of

defendant Johnson Controls World Services, Inc. ("World Services"), on her hostile work

environment sexual harassment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e-2000e-17 (1994) ("Title VII"). Dees contends that there were issues of material fact as to whether World Services took sufficient measures to prevent and correct sexual harassment at the fire station where Dees was employed. We agree, and therefore vacate the district court's entry of summary judgment and remand the case for further proceedings.

I.

World Services held a contract with the United States Navy to provide fire protection, security, transportation, and other services to the submarine base located at Kings Bay, Georgia. World Services hired Dees in 1989 to work in the Human Resources Department. In September 1991, she was transferred to the Fire Department at her own request, and became its Office Coordinator.

The Fire Department was geographically separate from World Services' other facilities. Consequently, it was rarely visited by Art Robb, World Services' Project Manager, who described the Fire Department as a "family" or a "fraternity." The Fire Department was managed by Fire Chief Waymon Rainey, and Assistant Chief Jerry Jacobs, and Dees worked under the supervision of both men.

According to Dees, during her three years at the Fire Department she was subjected to a continuous barrage of sexual harassment by Rainey and Jacobs, as well as Fire Captain Danny Stewart and Assistant Chief Alfred Amerson.[1] This almost-daily abuse took a variety of forms, from sexually explicit stories and jokes, to comments about her body or those of male

---

[1] Although the first specific incident of sexual harassment that Dees could recall occurred in 1993, Dees stated that numerous incidents occurred before then.

firefighters, to physical harassment. On one particularly humiliating occasion, Jacobs asked Dees to sit on his lap. When she refused, Jacobs picked her up and squeezed her so hard that she urinated in her pants. Jacobs, laughing, then told the other firefighters what had happened. On another occasion, Stewart ground his groin into Dees' buttocks after stating "look at that sexy mama, I could just eat you in that skirt." Rainey propositioned Dees on a number of occasions, whispering in her ear that she was "the kind of woman I like; you're not only beautiful, you're hot-blooded," or telling her that she needed a "sugar daddy" and that with a body like hers, she would not have to work if she listened to him. On numerous other instances, the four men grabbed or slapped Dees' buttocks, groped her leg, or otherwise touched her in a sexually suggestive manner.

According to Dees, she had no way of ending the abuse. Although she frequently complained to Rainey, he was one of the harassers. Predictably, therefore, he dismissed her complaints, telling her that she "needed to get used to it" and that the firefighters were merely joking. Dees also claims that she could not complain outside the Fire Department; although World Services had a sexual harassment policy, Rainey and Jacobs used their unchecked authority over the fire station to render the policy ineffective. They did so by threatening to retaliate against her if she complained, and by preventing Human Resources from properly investigating sexual harassment complaints in the Fire Department.

Dees alleges that Rainey and Jacobs threatened her with unspecified consequences if she raised complaints outside the Fire Department, and that they told her that World Services' sexual harassment policy did not apply to the Fire Department. The two men also prevented Dees from posting the policy in the fire station – in 1993 Rainey ordered Dees not to put up the policy, and

3

in 1994, when Dees posted the policy without their permission, Jacobs immediately removed it.[2]

Dees contends that the two men also hampered the effectiveness of the sexual harassment policy by conspiring with other firefighters to discredit any complaints that were made to Human Resources. In March 1994, a firefighter named Susan Clark complained to the Human Resources Department that Jacobs sexually harassed her. Dees claims that she overheard several discussions among Rainey, Stewart, Jacobs, Amerson, and others during which the firefighters fabricated a story to refute Clark's allegations and protect Jacobs from punishment. Rainey also warned Dees not to discuss Clark's complaint with Human Resources and told her that if a Human Resources investigator contacted her, she should offer a fake excuse to explain why she could not appear for questioning.

According to Dees, the Human Resources Department also contributed to the ineffectiveness of the sexual harassment policy by conducting harassment investigations poorly. For example, one of the employees assigned to investigate Clark's complaint, Joe Lewis, allowed Jacobs to read Clark's statement.[3] Consequently, Clark's allegations spread around the fire station, and thereafter, the firefighters shunned and ridiculed her. Although Dees claims that the investigation of Clark's complaint helped convince her that the sexual harassment policy was

---

[2] Although it is unclear from the record when World Services first issued this one-page sexual harassment policy, Dees admits that the policy may have been issued as early as 1989, and that World Services certainly issued the policy by 1993. Although World Services issued a more detailed six-page sexual harassment policy (which provides step-by-step instructions on how to make a sexual harassment complaint) in August 1994, it took this step only after Dees made the complaints that form the basis of this suit.

[3] Although World Services now claims that it was entirely appropriate for Lewis to show the statement to Jacobs so that Jacobs could respond, World Services does not deny that Robb disciplined Lewis for disclosing the statement.

4

ineffective, however, Dees does not deny that Clark's complaint resulted in Jacobs' immediate suspension, and later, his permanent transfer out of the Fire Department.

Although Dees had been afraid that she would lose her job if she made a complaint, by August 1994 Dees decided she could no longer tolerate the daily harassment. Consequently, on August 4, Dees complained to Human Resources. After making her complaint, Dees was sent to Robb, who immediately transferred her to a position in the Transportation Department with no loss in salary or benefits.[4] Robb then initiated an investigation of Dees' complaint, the result of which was that Jacobs and Stewart were fired and Rainey was placed on indefinite conditional employment status.

Dees filed this lawsuit against World Services on September 13, 1995. Her complaint alleged that she was subjected to continuous unwelcome sexual harassment by Rainey, Jacobs, Stewart, and Amerson, and that the harassment created a hostile work environment in violation of Title VII.[5] Dees asserted that World Services was liable for this harassment for two reasons.

First, Dees claimed World Services knew or should have known about the harassment but took no remedial action. According to Dees, the sexual harassment was so pervasive that World Services either knew about the harassment and did nothing, or at least should have known of its presence. Furthermore, Dees asserted, World Services could not claim that it lacked knowledge

---

[4] Dees was later transferred at her own request to the Supply Department, where she remained until World Services' contract with the Navy ended. While working for the Supply Department, Dees continued to receive pay increases and became the highest paid Office Coordinator on the submarine base.

[5] Dees' complaint also included a number of tort claims under Georgia law. These claims included battery, invasion of privacy, false imprisonment, wrongful hiring, wrongful retention, failure to maintain a workplace free from unwanted sexual misconduct and harassment, and intentional infliction of emotional distress.

of the harassment, because it lacked an effective procedure for employees to raise complaints outside of the Fire Department.

Second, Dees asserted that World Services was liable because Rainey and Jacobs were World Services' agents.[6] The Restatement (Second) of Agency states that an employer

> is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Restatement (Second) of Agency § 219(2) (1958). Dees contended that World Services was liable because Rainey's and Jacobs' apparent authority deterred her from filing a complaint. According to Dees, this apparent authority stemmed from Rainey's and Jacobs' authority to hire, fire, and promote Fire Department employees, as well as World Services' lack of an effective complaint procedure. In light of the fact that employees had no effective avenue for making complaints, Rainey and Jacobs had virtually complete authority over everyone they supervised. This authority, Dees contended, created the appearance that World Services endorsed the harassment.

Furthermore, Dees claimed that World Services was liable because Rainey and Jacobs were aided in committing the sexual harassment by their agency relationship with World Services. Both Rainey and Jacobs, Dees argued, used their power to fire Dees or increase her work load in order to intimidate Dees and prevent her from complaining about the abuse. Both men also used the authority given to them by World Services to place themselves into a position to harass her. On several occasions, for example, Rainey ordered Dees to ride with him in a car.

---

[6] Dees did not claim that Stewart and Amerson were agents of World Services.

6

Once Rainey had Dees in this confined space, Rainey groped her leg and asked her to have sex with him. If not for Rainey's agency relationship with World Services, Dees contends, he could not have ordered her into the car with him so that he could harass her.

On August 20, 1996, the court granted World Services' motion for summary judgment.[7] Assuming Dees was sexually harassed, the court reasoned, World Services was not liable for that harassment because it took prompt remedial action. In fact, the court stated that it could not imagine a faster response to the harassment complaint than the steps taken by World Services. The court pointed out that Dees was immediately transferred and personally escorted by Robb to meet her new supervisor. Furthermore, the Human Resources Department immediately began a detailed investigation of her complaint. Finally, that investigation resulted in remedial action – Stewart and Jacobs were fired, and Rainey was placed on conditional employment status.

Dees now appeals the court's entry of summary judgment. For the reasons set forth below, we conclude that there is an issue of material fact as to whether World Services had notice prior to August 1994 that Fire Department employees were being sexually harassed and failed to take prompt remedial action. Consequently, we vacate the district court's entry of summary judgment in favor of World Services and remand the case for further proceedings.

II.

We review a district court's grant of summary judgment de novo, applying the same legal standard as that employed by the district court. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112,

---

[7] The court dismissed Dees' state law claims without prejudice for lack of jurisdiction. Dees does not appeal the dismissal of these claims.

1117 (11th Cir. 1993). The district court's grant of summary judgment should be affirmed only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We must view all of the evidence and draw all reasonable factual inferences in favor of the non-movant. See Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998).

A.

As an initial matter, we address the standards for determining whether an employer can be held liable under Title VII for a supervisor's sexual harassment of an employee.[8] In two recent opinions, Faragher v. City of Boca Raton, – U.S. –, 118 S. Ct 2275, 141 L. Ed. 2d 662 (1998), and Burlington Industries, Inc. v. Ellerth, – U.S. –, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), the Supreme Court clarified the circumstances under which an employer can be held liable for a supervisor's harassing conduct. Using common law agency principles as a starting

---

[8] Title VII states:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). Title VII is violated when sexual harassment is "sufficiently severe or pervasive" to change the conditions of employment and create an offensive work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986). The harassment must be both subjectively and objectively offensive – the plaintiff must show both that a reasonable person would find the environment "hostile or abusive" and that she actually did find the environment to be offensive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993).

point, the Court delineated two grounds for employer liability.[9]

First, an employer can be held <u>directly</u> liable for a supervisor's harassment when the employer either intended, or negligently permitted, the tortious conduct to occur. The harassment can be ascribed to the employer's negligence when the employer knew or should have known about the harassment and failed to take remedial action. <u>See</u> <u>id.</u> at 2267. Second, an employer can be held <u>vicariously</u> liable for a supervisor's sexual harassment under any one of the following theories: (1) the supervisor holds such a high position in the company that he could be considered the employer's "alter ego"; (2) the harassment violates a nondelegable duty of the employer; (3) the supervisor uses "apparent authority" granted by the employer;[10] or (4) the supervisor is aided in committing the harassment by the existence of his agency relationship with the employer. <u>Id.</u>

The Court suggested that most cases of supervisor sexual harassment are appropriately analyzed under the fourth theory of vicarious liability. Focusing its attention on this theory, the Court laid out a new rule: an employer is vicariously liable for sexual harassment committed by a supervisor when the harassment results in a "tangible employment action" (such as termination

---

[9] These grounds for liability apply only when the supervisor is acting <u>outside</u> the scope of his employment. An employer is always liable for tortious conduct committed by a supervisor <u>within</u> the scope of his employment. Most sexual harassment, however, arises from gender-based prejudice or a desire for sexual gratification, rather than for the purpose of furthering the employer's interests. Thus, the general rule is that sexual harassment by a supervisor does not fall within the scope of the supervisor's employment. <u>Burlington</u>, 118 S. Ct. at 2366-67.

[10] The Court noted that most cases of sexual harassment by a supervisor involve the misuse of actual authority rather than the use of authority that the supervisor does not in reality possess. Consequently, the Court concluded that most cases of supervisor sexual harassment should not be analyzed under the "apparent authority" theory of liability. <u>See</u> <u>Burlington</u>, 118 S. Ct. at 2267-68.

9

or unwanted reassignment) against the victimized employee. When no such tangible employment action occurs, however, the employer's vicarious liability is subject to a two-part affirmative defense: the employer can escape liability by demonstrating (a) that it took reasonable steps both to prevent sexual harassment and to remedy the sexually harassing conduct promptly once it was brought to the employer's attention, and (b) that the victimized employee unreasonably failed to avoid harm or utilize any remedial opportunities made available by the employer. See Burlington, 118 S. Ct. at 2270; Faragher, 118 S. Ct. at 2292-93.

Thus, in regard to both the direct liability standard and the employer's affirmative defense to vicarious liability, the employer's notice of the harassment is of paramount importance; if the employer had notice of the harassment (which is required for direct liability but not required for vicarious liability), then it is liable unless it took prompt corrective action.

B.

With these standards in mind, we turn to the facts of the case before us. Dees alleged that World Services is liable to her under both the direct and vicarious standards of liability. According to Dees, World Services is directly liable because it knew or should have known that the Fire Department supervisors were sexually harassing employees, and failed to take prompt remedial action. Dees claims that World Services is vicariously liable because Rainey and Jacobs were aided in accomplishing the harassment by their agency relationship with World Services.[11]

---

[11] Dees also alleged that World Services is vicariously liable under the "apparent authority" theory. As noted in Burlington, however, cases such as the one before us that involve the misuse of actual authority rather than the use of fictitious authority are more appropriately

10

The district court held that even if Dees had been sexually harassed, World Services was not liable because it took prompt remedial action as soon as it received notice of the harassment.[12] We conclude, however, that an issue of material fact remains as to whether World Services had notice of the harassing conduct prior to Dees' August 4, 1994, complaint and took no action to correct the abuse. Two of Dees' allegations lead us to this conclusion.

First, Dees alleged that a Human Resources employee named Marie Moore called Dees after she filed her complaint. According to Dees, Moore had heard about Dees' complaint and commented to Dees that people in the Fire Department were "up to their old tricks again." Moore stated that she had investigated "the same complaints" about the Fire Department in 1991, and although Moore made suggestions to correct the harassing conduct, World Services failed to take any action.

Second, Dees alleged that Amerson told her on multiple occasions in 1993 and 1994 that he told Lewis and Robb that Dees was being sexually harassed. According to Dees, Amerson said that he believed a lot of the conduct toward Dees in the fire station was inappropriate (despite the fact that he allegedly harassed Dees himself), and that he decided to complain to Human Resources on Dees' behalf because he realized that Dees could not file a complaint herself.

---

analyzed under the "aided by the existence of the agency relationship" theory.

[12] Viewing the evidence in the light most favorable to Dees, it is beyond serious doubt that Rainey and Jacobs were Dees' supervisors – the two men had the authority to fire or promote her, and controlled her daily work assignments. It is also apparent that Dees suffered pervasive sexual harassment at the hands of these two men, as well as Stewart and Amerson. These men subjected Dees to offensive comments and humiliating physical abuse on an almost daily basis. Furthermore, it is evident both that Dees subjectively found her work environment abusive, and that a reasonable person would find it so.

A jury could reasonably infer from each of these allegations that World Services knew before Dees filed her complaint in August 1994 that Fire Department supervisors were sexually harassing employees, yet failed to take any corrective action.  We thus conclude that these allegations are sufficient to raise an issue of material fact as to whether World Services is both directly and vicariously liable for Dees' abuse, and that the district court inappropriately granted summary judgment in favor of World Services.

## III.

For the foregoing reasons, we vacate the district court's entry of summary judgment in favor of World Services and remand the case for further proceedings.

VACATED and REMANDED.