[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-10023

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 9, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00770-CV-BH-C

ELIZABETH J. HOWARD,

Plaintiff-Appellant,

versus

CITY OF ROBERTSDALE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(February 9, 2006)**

Before ANDERSON, BLACK and CARNES, Circuit Judges.

BLACK, Circuit Judge:

Appellant Elizabeth J. Howard appeals the district court's grant of summary judgment in favor of her employer, the City of Robertsdale. Howard alleges she was sexually harassed by Robertsdale's police chief, Alan Lassiter, while working as his secretary in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983. Although Robertsdale admits sexual harassment occurred, the city contends it is nonetheless entitled to summary judgment because no basis exists on which to hold it liable for Lassiter's conduct. The district court granted summary judgment for Robertsdale, concluding it was neither directly nor vicariously liable under Title VII, and had no policy or custom of sexual harassment to support a § 1983 claim. We affirm.

## I. BACKGROUND

In reviewing a grant of summary judgment, we must view the facts in the light most favorable to the nonmoving party. *Breda v. Wolf Camera & Video*, 222 F.3d 886, 888 (11th Cir. 2000). We thus recite the facts of this case in the light most favorable to Howard.

At all relevant times, Lassiter worked as Robertsdale's police chief and reported to the city's part-time mayor, Charles Murphy. In May 1999, Howard

was hired as Lassiter's secretary[1] and, within a few months, Lassiter began physically harassing her on a regular basis. According to Howard, the behavior occurred in private, and other city personnel were not aware of it. Robertsdale concedes, however, that physical harassment occurred.

Although Lassiter never physically harassed Howard in public, he made sexual jokes and comments in front of other employees on a regular basis. For example, when Howard left for lunch, Lassiter would often announce she was going home to get a "nooner." He also made offensive comments to other female employees about their bodies and sex lives. Howard claims everybody in the Police Department knew of this inappropriate behavior, but nobody confronted Lassiter or reported him. Although the Mayor was not aware of the behavior, he suspected Howard and Lassiter were involved in a sexual relationship for two reasons. First, he thought Lassiter had an ulterior motive for rehiring Howard because she had been a poor employee during her first tenure at the Police Department. Second, he had received complaints about Lassiter refusing to allow Howard to perform certain tasks that required her to interact with male state troopers.

---

[1] Howard previously worked for the Robertsdale Police Department for a few years in the 1990s. During that time, Lassiter was a lieutenant, and Howard suffered no sexual harassment.

3

Howard endured Lassiter's conduct for nearly three years without reporting it, though she admits she was aware of Robertsdale's sexual harassment policy during that time. The policy states: "All employees are responsible for helping to assure that we avoid harassment. If you feel you have experienced or witnessed harassment, you are to notify immediately (preferably within 24 hours) your immediate supervisor, personnel department, and/or the Mayor." As Howard contends, however, both she and other police personnel were "scared to death of [Lassiter]," and she feared retaliation. She also asserts Lassiter countermanded the policy by prohibiting his employees from going over his head to the Mayor.

In April 2002, Howard approached Chief Dispatcher Katina Griffin to complain about Lassiter's behavior, but Griffin did not report the behavior to higher authority. As Howard contends, Griffin occasionally served as her supervisor because she performed dispatching duties from "time to time."

On May 27, 2002, Howard and her husband finally complained to the Mayor. The Mayor immediately placed Howard on paid leave and quickly hired a private investigator to look into Howard's claims. He received the results of the investigation on August 23, 2002, and placed Lassiter on administrative leave five days later. Lassiter was officially terminated on October 24, 2002, for "lewd and immoral conduct" and "the sexual harassment of a female subordinate."

4

Howard filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in October 2002. After seeking a right to sue letter, she filed a judicial complaint against Robertsdale, alleging a hostile work environment in violation of Title VII and § 1983. Robertsdale filed a motion for summary judgment and, in her September 3, 2004, response, Howard for the first time asserted two tangible employment actions that Lassiter had allegedly taken against her. After finding these tangible employment actions barred from consideration, as Howard had failed to raise them in her EEOC charge, the district court granted summary judgment for Robertsdale. This appeal followed.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). After viewing the evidence and all factual inferences in the light most favorable to the non-moving party, we must determine if genuine issues of material fact exist. *Id.*

## III. DISCUSSION

A. *Title VII Claim*

Howard first argues the district court erred in granting Robertsdale summary judgment on her Title VII claim. Under Title VII, an employee must show the following five elements to establish a prima facie case of sexual harassment:

(1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

*Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004) (citations omitted).  Robertsdale concedes the first four elements, but disputes the fifth, arguing there is no basis on which to hold it liable for Lassiter's conduct.

There are two grounds on which an employer can be held liable for a supervisor's harassing conduct.  *Dees*, 168 F.3d at 421-22 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998)).  "First, an employer can be held *directly* liable for a supervisor's harassment when the employer either intended, or negligently permitted, the tortious conduct to occur. . . . Second, an employer can be held *vicariously* liable for a supervisor's sexual harassment. . . ."  *Id.*  Howard bases her appeal on both theories, so we will discuss each in turn.

1. *Vicarious Liability*

In two companion cases, *Ellerth*, 524 U.S. at 764-65, 118 S. Ct. at 2270, and *Faragher*, 524 U.S. at 808-09, 118 S. Ct. at 2293, the Supreme Court  set forth the framework for evaluating vicarious liability in sexual harassment cases.  An

employer is strictly liable for sexual harassment committed by a supervisor when the harassment culminates in a "tangible employment action." *Id.*; *see also Hulsey*, 367 F.3d at 1246. Where no tangible employment action is taken, as in a hostile work environment situation, the employer is entitled to an affirmative defense. *Id.* As this is a hostile work environment case,[2] Robertsdale can avoid vicarious liability for Lassiter's harassment if it can establish the affirmative defense.[3]

_____

[2] Howard urges us to impose strict liability on Robertsdale based on two tangible employment actions she asserted in her response to Robertsdale's motion for summary judgment. She has made it clear, however, that her sexual harassment claim rests solely on a hostile work environment theory. While her complaint pleads in detail a hostile work environment, it fails to offer even the slightest hint she suffered tangible employment actions. Even after Robertsdale asserted a failure to mitigate defense, Howard never amended her complaint to plead any tangible employment actions, and she continues to insist she is not relying on a tangible employment action theory as a basis for relief. Notwithstanding her failure to allege or argue a tangible employment action theory, she seeks to use newly asserted tangible employment actions to impose strict liability on Robertsdale with respect to her hostile work environment theory. Howard fails to provide any authority supporting this argument. We therefore conclude this is solely a hostile work environment case and analyze it accordingly under the *Ellerth-Faragher* framework. *See Hulsey*, 367 F.3d at 1246 (stating the *Ellerth-Faragher* defense "applies only to employer liability based upon a hostile work environment theory . . . . [and] has no effect upon employer liability based upon a tangible employment action theory").

[3] We agree with the district court that Robertsdale did not waive the *Ellerth-Faragher* defense by not referring to it by name in its Answer. Robertsdale raised a general "failure to mitigate damages" defense, which we conclude was sufficient to assert the *Ellerth-Faragher* defense. As the Supreme Court has held, "[f]ollowing *Ellerth* and *Faragher*, the plaintiff who alleges no tangible employment action has the duty to mitigate harm, but the defendant bears the burden to allege and prove that the plaintiff failed in that regard." *Suders*, 542 U.S. at 152, 124 S. Ct. at 2357. Thus, the *Ellerth-Faragher* defense is clearly a mitigation defense, and Howard had ample "notice of the affirmative defense and a chance to rebut it," as required by Fed. R. Civ. Pro. 8(c). *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989).

7

The *Ellerth-Faragher* defense contains two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293; *see also Frederick*, 246 F.3d at 1313. The employer bears the burden of demonstrating both elements by a preponderance of the evidence. *Id.*

An employer can generally satisfy its reasonable care requirement by, first, promulgating a comprehensive anti-harassment policy and, second, promptly responding to the employee's complaint. *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1297-1300 (11th Cir. 2000). In determining whether an anti-harassment policy is sufficiently reasonable, we look to whether the employer made it well-known to employees, vigorously enforced it, and included alternate avenues of redress. *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997). As to the employee's reasonableness requirement, an employer can generally satisfy its burden by showing the employee failed to follow its complaint procedures. *Frederick*, 246 F.3d at 1314. In some circumstances, however, an employee's noncompliance may be reasonable. *See id.* (finding questions of material fact precluded summary judgment where the employee claimed she never

8

received a version of the employer's sexual harassment policy, was unsure how to lodge a complaint, and was told by a supervisor not to pursue her complaint).

There is no question Robertsdale had a comprehensive anti-harassment policy in place when the harassment occurred. The city disseminated the policy to all employees, and Howard admits she knew of the policy during her three years working under Lassiter. The policy also provided multiple avenues of redress. Although Howard clearly could not take advantage of the first avenue of redress, as her immediate supervisor was the offending supervisor, she could have gone to either the Mayor or the City Council.[4] Howard fails to explain why she never complained to the City Council, and contends she never complained to the Mayor because Lassiter prohibited his employees from going to the Mayor. Howard's own actions, however, contradict this assertion. Howard did go to the Mayor, and she fails to explain any change in circumstances suddenly enabling her to go over Lassiter's head. Finally, there is no question the Mayor promptly responded once Howard lodged her complaint, as he immediately placed her on paid leave, quickly hired an investigator, and placed Lassiter on administrative leave only five days after receiving the results of the investigation.

---

[4] Robertsdale's anti-harassment policy refers to its "personnel department," but it appears this means the City Council.

The sole issue thus becomes whether Howard's nearly three-year delay in reporting Lassiter's harassment was unreasonable as a matter of law.[5]  Howard asserts her delay was reasonable because both she and other police personnel were scared of Lassiter's violent nature, and she feared retaliation.  We have held "absent a credible threat of retaliation . . . subjective fears of reprisal do not excuse [the] failure to report . . . alleged harassment." *Walter v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1290-91 (11th Cir. 2003) (citations omitted).  Other courts have agreed that conclusory allegations of feared repercussions are insufficient to overcome an employer's showing of unreasonableness.  *See Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) ("A generalized fear of retaliation does not excuse a failure to report sexual harassment."); *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001) ("A credible fear [of retaliation] must be based on more than the employee's subjective

---

[5] We reject Howard's argument that she complied with Robertsdale's policy by complaining to Chief Dispatcher Katina Griffin in April 2002.  An employee cannot satisfy the reasonableness requirement by making informal complaints to individuals not authorized to receive such complaints.  *Madray*, 208 F.3d at 1301-02.  Robertsdale's policy requires employees to report harassment to either the Mayor, the City Council, or an immediate supervisor.  Howard claims Griffin occasionally acted as her supervisor because she occasionally performed dispatching duties, but the record does not support this assertion.  Howard only performed dispatching duties "from time to time," so it is clear Griffin did not qualify as her immediate supervisor in the context of the policy.  In her deposition, Howard also mentioned Lassiter as her only immediate supervisor.  Moreover, even if Howard's complaint to Griffin could be considered in compliance with the policy, she still failed to report the harassment for nearly three years after it began.

10

belief."); *Shaw v. Autozone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999) ("[A]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment."); *Fierro v. Saks Fifth Ave.*, 13 F. Supp. 2d 481, 492 (S.D.N.Y. 1998) ("[T]o allow an employee to circumvent the reasonable complaint requirements of *Faragher* and [*Ellerth*] by making conclusory allegations of feared repercussions, would effectively eviscerate [the] affirmative defense. . . .").

We hold Howard's conclusory allegations of feared repercussions fail, as a matter of law, to overcome the unreasonableness of her delay in reporting Lassiter's harassment. Howard demonstrated only a generalized fear of retaliation, and the record offers no objective evidence to substantiate her fear. Nor does Howard explain why, after nearly three years of enduring Lassiter's harassment, she suddenly overcame her fear and developed the courage to complain to the Mayor. As we have repeatedly stated, "the problem of workplace discrimination . . . cannot be [corrected] without the cooperation of the victims, notwithstanding that it may be difficult for them to make such efforts." *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1366 (11th Cir. 1999). We recognize Howard may have been reluctant to report Lassiter's harassment, as victims of supervisory harassment often are. On this record, however, we conclude there is no genuine issue of

11

material fact to support a finding that Howard's delay in notifying Robertsdale of the harassment was reasonable.

Accordingly, the district court did not err in concluding Robertsdale had established the *Ellerth-Faragher* defense by a preponderance of the evidence, and the city is not liable under Title VII based on a vicarious liability theory.

2. *Direct Liability*

We must next decide whether the district court erred in concluding Robertsdale was not directly liable to Howard for Lassiter's conduct. Direct liability arises when the employer either knew or should have known of supervisory harassment but failed to take remedial action. *Dees*, 168 F.3d at 421-22. There is no evidence Robertsdale had actual knowledge of the harassment until Howard complained to the Mayor in May 2002. Although Howard argues the Mayor suspected a romantic relationship between Lassiter and herself, she fails to cite any authority saying suspicion of a consensual relationship between a supervisor and subordinate constitutes knowledge of sexual harassment. We refuse to impose direct liability on Robertsdale simply because the Mayor believed that Howard and Lassiter were romantically involved.[6]

_____

[6] The Mayor knew only that Lassiter had rehired Howard even though she was a poor employee, and that Lassiter was refusing to allow her to interact with male state troopers. Thus, there is no evidence indicating the Mayor had reason to believe that Lassiter was, in fact, sexually harassing Howard.

The only issue thus becomes whether Robertsdale had constructive knowledge of Lassiter's misconduct. Constructive knowledge is a question of fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997). It arises when sexual harassment is so pervasive in a workplace as to give the employer notice of the misconduct. *Id.* In *Allen*, for example, genuine issues of material fact precluded summary judgment on the issue of constructive knowledge where "an atmosphere of inappropriate sexual behavior may have permeated" the workplace. *Id.* There, the plaintiff produced evidence "that employees, including supervisors, engaged in sexual intercourse at the plant, that sexually graphic jokes were often told throughout the plant, that vulgar and sexually demeaning language was engaged in, that employees groped one another's breasts and genitalia, [and] that employees exhibited their genitalia and buttocks." *Id.* at 645.

There is no similar evidence in this case. Even Howard says the unwelcome advances and offensive touching occurred behind closed doors, and she is not aware of any employees that knew of the physical harassment. She instead points to Lassiter's "open and notorious" sexual comments and jokes as the basis for Robertsdale's constructive knowledge, specifically the frequent remarks he made about female employees' bodies and sex lives. Although his comments were inappropriate, those comments, standing alone, do not rise to the level of

discrimination under Title VII and cannot serve as a basis for constructive knowledge.

We have repeatedly recognized Title VII is not a general civility code and that "[s]exual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). To rise to the level of discrimination, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* at 1246 (quotations omitted). "The objective component of this analysis [considers four factors]: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

Mere "sex talk," without more, does not rise to the level of objectively severe and pervasive harassment. *See, e.g.*, *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir. 1998) (holding the plaintiff failed to make out a prima facie case of sexual harassment where her coworkers teased her and made sexual jokes aimed at her); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-84 (6th Cir.

14

1997) (holding male employee's comments and jokes in female plaintiff's presence were not sufficiently severe or pervasive to constitute an objectively hostile work environment). Accordingly, Robertsdale cannot be charged with constructive knowledge of sex discrimination because the behavior its employees allegedly knew of—sexual comments and jokes—was not discrimination in the first place.[7] The district court, therefore, did not err in granting summary judgment for Robertsdale on the issue of direct liability.

B. *§ 1983 Claim*

Howard also contends the district court erred in granting Robertsdale summary judgment on her § 1983 claim. The same five elements necessary to establish a sexual harassment claim under Title VII are required to establish a sexual harassment claim under § 1983. *Cross v. Alabama*, 49 F.3d 1490, 1508 (11th Cir. 1994). As Robertsdale concedes the first four of these elements, our sole inquiry is, again, whether a basis exists for holding the city liable for Lassiter's conduct.

---

[7] Furthermore, "where an employer has promulgated an effective and comprehensive anti-harassment policy that is aggressively and thoroughly disseminated to its employees, an employee's failure to utilize the policy's grievance process will prevent constructive knowledge of such harassment from adhering to the employer." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1279 (11th Cir. 2002) (citation and quotation omitted). Thus, even if Robertsdale could be charged with constructive knowledge, its comprehensive anti-harassment policy, combined with Howard's unreasonable delay in reporting the harassment, would insulate the city from liability.

15

"The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 663, 98 S. Ct. 2018, 2022 (1978)). Instead, liability arises when a municipal "custom" or "policy," either formal or informal, condones employee misconduct. *Id.* at 1307. We have recognized two situations giving rise to an informal custom or policy. *Id.* at 1308. The first is when a practice "is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* (finding "without any question that sexual harassment was the on-going, accepted practice at the City and that the City Commission, Mayor, and other high ranking City officials knew of, ignored, and tolerated the harassment"). The second is when a municipality tacitly authorizes employee misconduct or displays deliberate indifference towards it. *Id.*

Robertsdale certainly did not have a formal custom or policy condoning sexual misconduct. There is also no evidence the city had an informal custom or policy condoning sexual misconduct. Unlike *Griffin*, there is no evidence that sexual harassment was a widespread practice in Robertsdale or that Robertsdale had any knowledge of the harassment until Howard complained to the Mayor. The record instead reveals a comprehensive sexual harassment policy, of which all

16

employees were aware, and an immediate response by the Mayor after Howard lodged her complaint. Furthermore, Robertsdale's policy, combined with the Mayor's prompt response to Howard's complaint, precludes a finding that the city displayed deliberate indifference to the rights of its employees. *Id.* at 1313. Accordingly, the district court did not err in granting Robertsdale summary judgment on Howard's § 1983 claim.

## IV. CONCLUSION

The district court did not err in granting Robertsdale's motion for summary judgment because no basis exists, under either Title VII or § 1983, on which to hold the city liable for Lassiter's harassing conduct. Accordingly, we affirm the district court's decision.

**AFFIRMED**.