[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-13061
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 22, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-01052-CV-WDS-1

OLEY NJIE,

Plaintiff-Appellant,

SERING OMAR MBYE,

Plaintiff,

versus

REGIONS BANK,
RAYMOND WINSTON GROAT,
DIANA PENNINGTON,
LISA MCCOLLUM,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 22, 2006)**

Before ANDERSON, DUBINA and HILL, Circuit Judges.

PER CURIAM:

This is an employment action appeal by plaintiff-appellant Oley Njie (Njie) from a grant of summary judgment by the district court in favor of defendants-appellees Regions Bank (Regions), Raymond Winston Groat (Groat), Diana Pennington (Pennington) and Lisa McCollum (McCollum) on Njie's federal claims of disparate treatment under 42 U.S.C. § 1981 and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Based upon the following, we affirm the judgment of the district court.

## I.

Briefly, we set forth the facts.[1] Njie is an African-American female who was hired by Regions in March 2002 as branch manager of its Sandy Springs branch. Njie's direct supervisor was Pennington, group branch manager. Pennington reported to Groat, branch administrator and senior vice-president. McCollum was hired in July 2002, as Njie's assistant branch manager. Problems arose almost immediately. The pertinent time frame of this appeal is the two-month period, August and September, 2002.

In her declaration, Njie averred that McCollum referred to her as a 'token' on more than one occasion, stated that she did not want to work for a black

---

[1] They are detailed thoroughly in the forty-five page report and recommendation of the magistrate judge and adopted by the district court in its judgment.

manager, and, that she did not respect her.[2]   In addition to racial bias, Njie declared that McCollum was insubordinate, refused to follow orders, refused to hold committee meetings or submit reports, and refused to inform Njie of her lunch or vacation schedule, stating that Njie "could not do anything to her."

Coincidentally, during this same two-month time frame, competing complaints against Njie's management of the branch and her treatment of associates were expressed to Pennington and Groat.   Associates complained that Njie was not approachable; that they did not trust her; that she kept her door shut too much; that she either could not or would not answer questions about Regions' financial products and operations;  that she reprimanded them without justification; and was inconsistent in her management style, sometimes instructing associates to do something a specific way, and then criticizing them the next day for doing as instructed.

In her deposition, Njie testified that in September 23, 2002, she sent Pennington and Groat an email stating that she would like to talk to both of them at their earliest convenience.  Pennington met with Njie on September 23.  At this

---

[2] Njie also declared that McCollum harbored racial animus toward Hispanic co-worker, Mery Cooper.  When Njie attempted to discuss the issue with McCollum, again McCollum allegedly told Njie that Njie "could not do anything to her."  When Njie complained to Pennington, she was allegedly told that she could not do anything about it and to "leave it alone."

meeting, Njie told Pennington that she felt that she was being harassed because of her race. In her deposition, Pennington testified that this was the first time that Njie complained to her about alleged racial harassment or discrimination.[3]

After the meeting, Pennington informed Groat about Njie's allegations, Groat contacted senior vice president Steve Bickelhaup. Groat and Bickelhaup informed Regional Human Resources Director Michelle Rivers, and Rivers immediately began an investigation on September 24, 2002. Rivers interviewed Njie on the telephone that day and met with her on October 2, 2002. On October 2, Njie told Rivers that McCollum had referred to her as a "token"; that there were racial undertones at the branch; that McCollum's father had been a member of the Ku Klux Klan; and that McCollum had been "raised that way."

On October 2, 2002, Njie told Pennington that she wanted to discipline McCollum regarding her allegations. Pennington testified in her deposition that she told Njie to refrain from disciplining McCollum while there was an ongoing investigation into her allegations, as it would be better to allow Human Resources

---

[3] The district court found certain parts of Njie's deposition to be contradictory as to whether Pennington and Groat were made aware of Njie's complaints prior to the September 23 email. In fact, emails sent prior to September 23 contain no indication that Njie made any allegations of race discrimination before that date. There is nothing in the record, other than Njie's declaration, to indicate that Pennington and Groat did not respond to earlier oral complaints made by Njie. The district court concluded that a reasonable jury could not find that Njie complained about McCollum's allegedly discriminatory statements before September 23, 2002. We agree.

4

to determine what, if any discipline was warranted.[4]

As the investigation continued, Rivers and a member of her staff interviewed nine Sandy Springs associates. The associates' descriptions of Njie's conduct raised serious concerns about Njie's ability to manage the Sandy Springs branch and her treatment of associates. On October 23, 2002, Rivers and Pennington met with Njie and detailed their concerns in a sternly-worded counseling memorandum.[5]

Njie reacted. On October 24, 2002, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination and retaliation. Approximately one week later, on November 1,

_____

[4] Although Njie avers in her declaration that Pennington instructed her not to discipline McCollum as early as August 23, 2002, the district court concluded the evidence to be to the contrary.

[5] The counseling memorandum bluntly stated in part:

The purpose of this memorandum is to outline and address concerns regarding your performance and management style. The following concerns have been identified as "ongoing" and have been repeatedly brought to the attention of Management and Human Resources. Additionally, several employees have requested the assistance of Human Resources in an effort to improve the dysfunctional work environment believed to have been created by your management style . . .

Screaming at Associates[;] Referring to Customers and Associates as "Liars"[;] Failure to communicate with confidentiality when dealing with subordinates . . . Creating an Atmosphere of Distrust Amongst Associates[;] Inability to Develop Positive Working Relationships . . . Not able to answer employee questions concerning product knowledge, daily branch operations, and customer accounts ... Unapproachability and periodic unavailability.

2002, Njie took a medical leave of absence and told Pennington she did not know when she would be able to return to work.

A great amount of corporate restructuring and employee transfers by Regions took place in the last two months of 2002, including the acquisition of seven additional branches, effective January 2003. Although neither Bickelhaup nor Groat knew when or if Njie was going to return from leave, Groat intended to make Njie the branch manager of the Buckhead branch, if she did return.

Njie returned to work on January 21, 2003, this time, as the Buckhead branch manager. In this position she received the salary and benefits that she had received as the Sandy Springs branch manager, and her duties, responsibilities and position were identical.[6] Although Njie admitted that no one made any racial remarks to her at the Buckhead location, nevertheless, she resigned two months later on March 10, 2003, and filed this lawsuit in April 2003.

## II.

We review a district court's grant of summary judgment *de novo*. *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). After reviewing the evidence and all factual inferences in the light most favorable to the

---

[6] It is undisputed that, had Njie remained as Buckhead branch manager until the end of 2003, she would have received a larger incentive payout than had she remained as the Sandy Springs branch manager.

non-moving party, we must determine if genuine issues of material fact exist. *Id.* The same requirements of proof and the same analytical framework apply to Title VII and Section 1981 claims, so we "explicitly address the Title VII claim with the understanding that the analysis applies to the Section 1981 claim as well." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

## III.

We first address Njie's contentions that the district court erred in granting summary judgment in favor of Regions, Groat, Pennington and McCollum on her disparate treatment racial discrimination claim. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981(a) reads, in pertinent part: "All persons . . . shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).

A plaintiff may establish a prima facie case of disparate treatment in a race discrimination case using either direct or circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence is that

which "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id*. Pursuant to one of the methods of establishing a prima facie case, a plaintiff may show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably than she was treated; and (4) she was qualified to do the job. *Id*. If the plaintiff satisfies these elements, the defendant must show a legitimate, non-discriminatory reasons for its employment action. *Id*. If it does so, then the plaintiff must offer evidence to support a finding that the reason provided by the defendant is a pretext for unlawful discrimination. *Id*. If the plaintiff does that, she can avoid judgment as a matter of law against her. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).

In this case it is unclear as to whether Njie can present direct evidence or merely circumstantial evidence of race discrimination. In this circuit, at this point in a disparate treatment analysis, Njie must show that an adverse employment action was taken against her regardless of whether she is relying on direct or circumstantial evidence. *See Hipp v. Liberty Nati'l Life Ins. Co.*, 252 F.3d 1208, 1230 n.34 (11th Cir. 2001) (citations omitted).

The first argument espoused by Njie on her claim that she suffered an

adverse employment action is that she was stripped of her authority as a manager. She claims she lost control of her branch when Pennington instructed her not to discipline subordinates such as McCollum until after the Human Resources investigation was complete.[7] In effect, Njie contends that she suffered a *de facto* demotion.

However, Njie does not cite any authority, legal or otherwise, to support her position that this instruction constituted an adverse employment action. We agree with the district court in its finding that no reasonable jury could conclude that Pennington's instruction amounted to a materially adverse change in Njie's employment. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001). Considering the competing complaints and the finger pointing transpiring during this period of time, it would be reasonable for Pennington to issue such an instruction. *See Davis*, 245 F.3d at 1239 ("We therefore hold that, to prove adverse employment action . . . , an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.").[8]

---

[7] We find no support in the record for Njie's assertion that she complained to Pennington and Groat about McCollum before the September 23 email.

[8] We do not discuss Njie's second argument is that the counseling memorandum is evidence of an adverse employment action. *See* note 5 *supra*. In this circuit, criticisms of an employee's job performance that do not result in tangible job consequences are not a proper predicate for a Title VII action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001).

Njie's second argument is that she was subject to an adverse employment action when she was transferred from Sandy Springs to Buckhead as branch manager. Njie claims that the Buckhead branch was a smaller, less profitable branch. However the record is clear, that had she stayed at Buckhead until the end of 2003, her pay incentive would have been greater than had she stayed at the Sandy Springs branch.

In addition, the transfer from Sandy Springs to Buckhead was apples and apples, a lateral career move. Njie received the same salary at Buckhead. She received the same benefits. She retained the same position. Njie retained the same duties and responsibilities. This lateral transfer with full retention of benefits could not be described as an adverse employment action. *See Doe v. DeKalb County School District*, 145 F.3d 1441, 1452-53 (11th Cir. 1998). Since Njie has failed to show an adverse employment action, the district court did not err in granting summary judgment to the defendants on her disparate treatment claim.

IV.

Njie's final contention, to the extent we understand it, is Regions subjected her to a racially hostile work environment in Violation of Title VII. The employee has the burden of proving a hostile work environment. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995). To establish a hostile work

10

environment, Njie must demonstrate: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on the protected characteristic, here race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and thus create a discriminately abusive work environment; and (5) that the employer is responsible for that environment under a theory of either direct or vicarious liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The fourth requirement has both subjective and objective components. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The employee must personally perceive the harassment as severe or pervasive. *Id*. Additionally, the environment must be one that a reasonable person in the employee's position would find hostile or abusive. *Id*. The factors a court considers in evaluating the objective component include: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*.

In this appeal, Njie is an African-American female. She allegedly heard McCollum make racial slurs on several occasions, using the words "token" and "quota." The question then becomes, was this harassment sufficiently severe and

11

pervasive to affect the terms and conditions of Njie's employment?

Njie has failed to demonstrate that any unwelcome harassment was objectively so pervasive as to alter the terms and conditions of her employment. While Njie alleged that McCollum made racial comments that she found offensive, these remarks were not frequent or severe enough to constitute a hostile work environment. *See Mendoza*, 195 F.3d at 1246.

In addition, Regions was in the process of conducting a prompt and ongoing investigation of Njie's complaints at the time she chose to leave. It is clear, therefore, as to Njie's hostile work environment claim, that the district court did not err in granting summary judgment in favor of Regions.

## VI.

The judgment of the district court is affirmed.

AFFIRMED.