[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 18, 2005**
**THOMAS K. KAHN**
**CLERK**

———————————————

No. 04-11014

———————————————

D. C. Docket No. 02-01661-CV-CAP-1

THALIA S. GILLIS,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF CORRECTIONS,
ALVINA CHANCE, et al,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————————

**(February 18, 2005)**

Before CARNES and COX, Circuit Judges, and STROM[*], District Judge.

COX, Circuit Judge:

———————————————

[*]Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

## I. Introduction

Thalia Gillis appeals the district court's grant of summary judgment in favor of her employer, the Georgia Department of Corrections, and her former supervisors, Alvina Chance and Nan Duffey, on her race discrimination claim. Gillis, an African-American woman, received a raise as a result of her annual employment evaluation, but not as large of a raise as she would have received had her evaluation been more favorable. The district court held that Gillis had not shown an adverse employment action under Title VII. We conclude that this was error, and reverse and remand for further proceedings on Gillis's discrimination claim.[1]

## II. Background and Procedural History

Thalia Gillis, an African-American woman, began working for the Georgia Department of Corrections in 1987.[2] (R2-25-17.) Gillis is a probation officer with the Dublin, Georgia Probation Office, which employs about 16 probation officers and serves the four counties in the Dublin judicial circuit: Laurens, Twiggs, Johnson, and Treutlen. (Id. at 46-47.) Most of the probation officers work in the Dublin office;

---

[1]Gillis also asserted a retaliation claim. The district court determined that Gillis failed to establish a *prima facie* case of retaliation. Gillis contends that this was error, but we find no error in this determination. We affirm the district court's judgment in favor of the defendants on the retaliation claim without further discussion. *See* 11th Cir. R. 36-1.

[2] Reviewing a grant of summary judgment, we are required to view the facts in the light most favorable to the nonmoving party. *Walls v. Button Gwinett Bancorp, Inc.*, 1 F.3d 1198, 1200 (11th Cir. 1993). We therefore recite the facts in the light most favorable to Gillis.

Gillis is the only probation officer in the small town of Soperton, located in Treutlen County. (Id.)

Gillis's primary job responsibility is to supervise probationers for the state court in Treutlen. (Id. at 51.) With a typical case load of about sixty-eight probationers a month, Gillis conducts presentence investigations for the court, and makes sure that the probationers report in, make their payments, and attend any required alcohol or drug treatment programs. (Id. at 52.) Gillis also handles administrative cases and monitors probationers who transfer out of Treutlen County, in addition to serving as a backup officer for Johnson and Laurens counties. (Id. at 51.)

Probation officers are evaluated annually. Their evaluations are prepared on a State form called a Performance Management Form. (R.2-28-P5.) Under Section 3 of the form, entitled "Job and Individual Responsibilities," employees are assigned one of four ratings: (1) "did not meet expectations;" (2) "met expectations;" (3) "exceeded expectations;" or (4) "far exceeded expectations." (R.2-25-Ex.1.) Under Section 4 of the form, entitled "Terms and Conditions of Employment," employees are evaluated for whether they worked when scheduled, dressed appropriately, and followed health and safety rules; employees receive a rating in Section 4 of "did not meet expectations," "needs improvement" or "met expectations." (Id.) Under Section

3

5 of the form, entitled "Overall Ratings," the employees receive an overall rating for Sections 3 and 4. (Id.) An employee who receives an overall rating of a "met expectations" earns a three percent raise; an employee who receives an "exceeded expectations" earns a five percent raise. (R.2-25-56.) An employee who receives a "did not meet expectations" is not eligible for a salary increase.[3] (R.2-25-Ex.1.)

Gillis and her colleagues are also evaluated semi-annually. These mid-point reviews are prepared on a State form called a "Management Review Form" and contained ratings of "NI" (needs improvement), or "M" (met expectations). (R.2-25-Ex. 1.) Unlike the annual review, the mid-point review has no effect on an employee's salary, but is designed to provide feedback to employees half way through the work year. (R.2-25-85.)

Gillis's supervisors, Nan Duffey, the Chief Probation Officer, and Alvina Chance, met to determine who should receive an "exceeded expectations" rating for the 1999-2000 work year. During the meeting, Duffey and Chance tried "to recall throughout the year if there was anything that stood out about a Probation Officer, such as their willingness to work court without being asked, volunteering to stay late in somebody else's place that had an emergency, tending the front office because we

---

[3]While there is some dispute in the evidence as to whether an "exceeded expectations" evaluation automatically results in a five percent raise, we of course view the evidence in the light most favorable to the plaintiff.

didn't have a secretary, and you know, whether or not they did it joyfully or complained about it. . . ." (R.3-43-39.) Chance admitted that there were no written criteria for determining when a person exceeded expectations. (R.3-43-83.) Duffey and Chance determined that Gillis did not deserve a rating of "exceeded expectations," but only a "met expectations" rating for the year. (R.3-32-58.) Chance then completed Gillis's 1999-2000 Performance Evaluation Form. (Id.) Duffey and Chance awarded only two ratings of "exceeded expectations" that year, to Joey Stinson and Mark Bowers, both of whom are white. (R.3-32-Ex. 52, R.3-32-Ex. 64.) The office had awarded more than two "exceeded expectations" in past years. (R.3-43-38.)

Gillis had received an "exceeded expectations" rating only once, in 1995; she had never again received the higher mark, even though she continued to work just as hard as she had prior to her 1995 evaluation.[4] (R.3-32-Ex. 1.) One of Gillis's colleagues, Kevin Corbin, testified that her work was consistently "very thorough" with "very close attention to detail." (R.4-49-47.) Chance, however, had told Gillis

_____

[4]In 1995, an employee received no raise in salary for earning an "exceeded expectations." The Department of Corrections, however, later changed that policy to provide a five percent raise for an employee who "exceeded expectations." Gillis never received an "exceeded expectations" rating once the new policy took effect. (R.3-32-Ex. 1.) Gillis testified that "up until a few years before then, whether you got a met or an exceed did not affect your pay increase. And once I was told that I would never get one, I mean that was predetermined by somebody. They had already decided. It didn't matter how hard I worked or what I did, I wouldn't get one, so that had to be discrimination." (R.2-25-121.)

5

that no matter what she did on the job, she would never receive an "exceeded expectations." (R.2-25-76.)

Gillis wrote in the comments section of the 2000 Form that she believed she had been the victim of racial discrimination. (R.2-25-Ex. 1.) She filed a formal grievance with the Department of Corrections about her evaluation. (R.2-25-151.) Gillis was subsequently assigned new job duties in the Dublin office. While considering where to have Gillis work in the Dublin office, Duffey stated, in reference to Gillis: "ain't [it] like a fucking nigger to complain."[5] (R.3-31, 6-7; R.3-38-7.)

Gillis sued the Georgia Department of Corrections, Joe Ferrero in his official capacity as acting Commissioner, Alvina Chance, and Nan Duffey. In her complaint, Gillis alleges that the Georgia Department of Corrections unlawfully discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of

---

[5] The remark was overheard by at least two employees, one of whom later told Gillis about it. According to one employee, Kevin Corbin, Duffey regularly used racial slurs in the office. (R.4-49-43)("[R]acial slurs were kind of common place."). In response to a separate complaint, the Department of Corrections conducted an internal investigation of Duffey and Chance, demoting them out of the chain of command, and proposing further disciplinary action. Shortly thereafter, they both retired. (R.2-23-3.)

Gillis contends that Duffey's racial slur is direct evidence of discrimination. While the slur certainly is circumstantial evidence of discrimination, we find no error in the district court's determination that Duffey's remark is not direct evidence. *See Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir. 1997) ("Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence.")(internal citations omitted).

1964 as amended, 42 U.S.C. § 2000e, *et seq.*[6]  She further asserts claims under 42 U.S.C. §§ 1981 and 1983, and alleges that the defendants' conduct constitutes unlawful discrimination on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.    The defendants moved for summary judgment, and the magistrate judge issued a Report and Recommendation granting the defendants' motion.  Gillis objected to the Report and Recommendation; the district court adopted it and granted the defendants' summary judgment. Gillis appeals.

## III.   Issue on Appeal and Standard of Review

We consider whether the district court erred in concluding that the defendants' decision to provide Gillis with a three percent raise, as opposed to a five percent raise, in conjunction with her annual employment evaluation could not, as a matter of law, constitute an adverse employment action.  We review the district court's grant of summary judgment de novo. *Jones v. Dillard's Inc.*, 331 F.3d 1259, 1262 (11th Cir. 2003).  According to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[6]"The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  Gillis made this distinction clear in her complaint, though the briefs confuse the issue.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## IV. Contentions of the Parties

Gillis contends that the district court erred by holding that she had not shown an adverse employment action based on her performance evaluation rating and corresponding raise. Gillis notes that her monthly salary for 1999-2000 was $3,081.50. (R.4-56-Ex. 1.) The difference between the three percent raise for a "met expectations" and the five percent raise for an "exceeded expectations" would therefore be $76.03 per month, or $912.36 per year.

The defendants respond that Gillis's raise, while not as high as the raise corresponding to an "exceeded expectations" rating, should not be considered an adverse employment action. Gillis did not receive a negative evaluation, nor was she penalized by losing any portion of her benefits or salary. To characterize Gillis's favorable evaluation, and corresponding pay *increase*, as an adverse employment action is, according to the defendants, not supported by logic or by law. Moreover, the defendants contend that an "exceeded expectations" rating was merited only for going beyond the minimum expectations of the job, and Gillis simply did not warrant such a rating.

V. Discussion

The Supreme Court has written so much about the Civil Rights Act of 1964, and Title VII of that Act, that it is easy to overlook the language of the statute itself. Thus, we begin our discussion with the language of Title VII. It states that it shall be an unlawful employment practice for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his *compensation*, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1) (emphasis added). We note at the outset that the statute itself mentions compensation; according to the statute's plain language, it is unlawful for an employer to discriminate against an individual with respect to her compensation on the basis of her race. Courts have uniformly required a plaintiff suing under § 2000e-2(a) to establish, as part of her prima facie case, a so-called "adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001); *see, e.g., Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11th Cir. 2000) ("Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973), a plaintiff can establish a *prima face* case that she was discriminated against in violation of Title VII by showing: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her

9

employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue."). A prima facie case of discrimination may be established with circumstantial evidence, and the *McDonnell Douglas* framework is to be liberally construed. *See McDonnell Douglas,* 411 U.S. at 802, n.13, 93 S. Ct. at 1824, n.13 ("The facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations."); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 n.6, 101 S. Ct. 1089, 1094, n.6 (1981) (observing that "this standard is not inflexible.").

Following the language of the statute, we have indicated before that actions that affect compensation are considered adverse employment actions. In *Gutpa v. Florida Board of Regents*, 212 F.3d 571 (11th Cir. 2000), we considered the case of an assistant professor who sued the Florida Board of Regents under Title VII. In that case, Gupta presented testimony that she was not given a pay raise despite an above satisfactory evaluation by her supervisor. *Id.* at 587. Gupta claimed that the denial of the pay raise was an adverse employment action, as was the denial of an extension on her tenure clock. *Id.* at 590. We agreed. "The denial of a pay raise clearly affects Gupta's compensation, and tenure-related decisions affect an important term of employment for a university professor. They are adverse employment actions." *Id.*

10

Similarly, in *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994), we considered the case of a police chief's secretary who sued the city of Plantation, Florida after she was transferred to a less desirable job. The employee produced evidence that, although her salary had not decreased, "her eligibility for salary increases is less in her new position than in her former job" and the new position involved less responsibility and more menial tasks. *Id.* at 1564. We readily concluded, and the defendant readily conceded, that the transfer was an adverse employment action. *Id.*

In the case at bar, there was evidence that Gillis's evaluation and Gillis's compensation were inextricably intertwined. The evidence in the record demonstrates that had Gillis's supervisors decided that she exceeded expectations, as opposed to just meeting expectations, she would have received an additional $912.36 per year in compensation.[7] We recognize that Title VII is "neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Gupta*, 212 F.3d at 587. But Title VII explicitly condemns discrimination in compensation.

The defendants, and the court below, relied on *Davis* to conclude that Gillis had not suffered an adverse employment action. Our decision in *Davis*, however, suggests the opposite result in this case. In *Davis*, a police officer alleged that he

---

[7]We note that this additional compensation was significant not only for its present value but also for its future benefit. Any future raises would be based on Gillis's increased salary; thus, an additional $912.36 in compensation one year would yield even larger raises in the years to come.

11

suffered an adverse employment action as a result of two corrective job performance memos placed in his personnel file and two instances where he was temporarily removed as the officer in charge. *Id.* at 1234. We noted that Davis did not suffer any loss in pay or benefits as a result of these actions, and therefore we concluded that Davis had not suffered an adverse employment action. *Id.* at 1240. Our reasoning in *Davis* clearly suggests that had Davis's job evaluations or assignments affected his salary, it would be considered an adverse employment action.

We hold that an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII. We note that this case does not involve disentitlement to a de minimus raise; rather, the denial of the raise at issue here was an employment decision that significantly affected Gillis's compensation. The initial burden of establishing a prima facie case of discrimination is not onerous, and Gillis has carried that burden here. Gillis suffered an adverse employment action, and established a prima facie case of discrimination.

The fact that a plaintiff establishes a prima facie case of discrimination does not of course preclude a grant of summary judgment for an employer. *Wall v. Trust Co. of Georgia*, 946 F.2d 805 (11th Cir. 1991). The defendants may articulate legitimate, nondiscriminatory reasons for their conduct. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991). "If the defendant's proffer of

12

credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination." *Id.* at 950. But in this case the district court did not reach the issue of pretext because of its conclusion that there had been no adverse employment action. We therefore reverse the district court only as to whether Gillis established a prima facie case of discrimination, and remand for further proceedings on Gillis's discrimination claim.

## VI. Conclusion

Thalia Gillis established a prima facie case of discrimination. We vacate the judgment on her discrimination claim and remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.