[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16737
Non-Argument Calendar
_____

D. C. Docket No. 04-00420-CV-2-MHT-CSC

TAMIKA J. AUSTIN,
LA'KEYSHA JOHNSON,
TRACY LOUDER,

Plaintiffs-Appellants,

versus

THE CITY OF MONTGOMERY,
BOBBY BRIGHT, official capacity as Mayor of Montgomery,
JIM MORRISON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 2, 2006)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Tamika Austin, La'Keysha Johnson, and Tracy Louder, all African-American females, appeal the district court's order granting summary judgment in favor of their employer, the City of Montgomery (City), on their claims of race discrimination, hostile work environment, retaliation, and pattern and practice brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 3(a), and 42 U.S.C. § 1981. Louder also appeals the district court's decision not to exercise supplemental jurisdiction over her state law assault claim. After review, we affirm.

## I. DISCUSSION

### A. *Title VII and § 1981 claims*

We review a district court's grant of summary judgment de novo. *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). After reviewing the evidence and all factual inferences in the light most favorable to the non-moving party, we must determine if genuine issues of material fact exist. *Id.*

Title VII assures equality of employment opportunities by eliminating those practices that discriminate on the basis of race. *See* 42 U.S.C. § 2000e-2(a); *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817, 1823 (1973). Section 1981 protects an individual's right to be free from racial discrimination in the "making, performance, modification, enforcement, and termination of contracts." 42 U.S.C.

2

§ 1981. We have recognized the analysis of claims under both laws is essentially the same. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that because Title VII and § 1981 have the same requirements of proof and use the same analytical framework, we analyze race discrimination claims under both laws simultaneously). Thus, the analysis of Appellants' Title VII claims applies equally to their claims brought under § 1981.

    1.    *Austin's disparate treatment claim*

In order to establish a prima facie case of disparate treatment, Austin must demonstrate: (1) she belongs to a class protected under Title VII; (2) she was qualified for the job; and (3) a similarly-situated employee engaged in the same misconduct that she engaged in, but was disciplined differently. *Lathem v. Dep't of Children and Youth Serv.*, 172 F.3d 786, 792 (11th Cir. 1999). As for the third requirement, "[t]he relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Id.* at 793. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Austin failed to demonstrate a prima facie case of disparate treatment because she did not identify a similarly-situated employee who engaged in excessive phone usage like herself but was not similarly disciplined. Austin purported to identify Cheryl Daniel as a comparator, but she did not proffer any evidence showing Daniel engaged in or was accused of similar misconduct. Austin submitted Daniel's phone log, but the log covered a different and longer time period than Austin's phone log, and contained no analysis of Daniel's calls or indication of how many of her calls were personal in nature. No other evidence of discrimination exists to support a finding of disparate treatment. Austin was disciplined for conduct—excessive phone usage—that she admitted to and was clearly a violation of City policy. Thus, since Austin failed to show a similarly-situated comparator, the district court did not err in granting summary judgment to the City on her disparate treatment claim.

2. *Austin's retaliation claim*

To establish a prima facie case of retaliation, Austin must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was some causal relationship between the two events. *Id.* at 1566. "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason

4

for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for retaliatory conduct. *Id*.

Here, the district court assumed Austin met her prima facie case of retaliation. Since the City offered legitimate, non-discriminatory reasons for suspending Austin as she had admittedly made over 72 hours of personal phone calls in a three and one-half month period, conduct forbidden by City policy, she bore the ultimate burden of showing the City's reason for suspending her was a pretext for discrimination. *See Pennington*, 261 F.3d at 1266.

To show pretext, Austin pointed to: (1) unsigned counseling memos in her personnel file, which she alleged were false; (2) the City's progressive discipline policy and the City's alleged failure to follow it in her case; and (3) a statement from Lloyd Faulkner, the City's director of finance, that most employees violated the phone policy. None of these arguments are availing as they are factually incorrect. First, the unsigned counseling memos were not used in taking disciplinary action against Austin, and she was aware of this. Next, the record shows the City's progressive discipline policy is not mandatory and does not apply to certain situations, such as using City property for personal use. Finally,

Faulkner's statement that most employees violated the phone policy is taken out of context. Faulkner testified that personal phone calls, though they may occasionally occur, should not be excessive, and that an employee observed making excessive phone calls would be dealt with accordingly. None of the reasons proffered by Austin cast doubt on the City's decision to suspend her because excessive personal phone use is against City policy, and Austin admitted her misconduct. Accordingly, the district court did not err in granting summary judgment to the City on Austin's retaliation claim because she could not establish pretext.

3.    *Johnson and Louder's hostile work environment claims*

The employee has the burden of proving a hostile work environment. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995). To establish a hostile work environment, she must demonstrate: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic, here race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and thus create a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

6

The fourth requirement has both subjective and objective components. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). The employee must personally perceive the harassment as severe or pervasive. *Id.* Additionally, the environment must be one that a reasonable person in the employee's position would find hostile or abusive. *Id.* The factors a court considers in evaluating the objective component include: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

As for Johnson's de facto demotion, construed as a hostile work environment claim, the district court did not err in granting summary judgment for the City. Although Johnson belongs to a protected group, she did not show she was subjected to unwelcome harassment. She only referred to what she perceived as a lessening of job duties and having to ask other employees for work as grounds for her hostile work environment claim, but did not show how this constituted harassment. Even if the change in her job duties constituted unwelcome harassment, Johnson brought forth no evidence showing it was based on her race. She mentions, on appeal, racial harassment at the hands of Morrison, but the record does not reveal what this harassment was or how it related to her race. While she

7

may have subjectively perceived the changes in her duties as making her "beneath" her coworkers, she remained at the same job classification and pay rate, and received the same benefits. Thus, the terms and conditions of her employment were in no way altered.[1] Because Johnson did not make out a prima facie case of hostile work environment, the district court did not err in granting summary judgment for the City on this claim.

Nor did the district court err in granting summary judgment with respect to Louder's hostile work environment claim because, even if she subjectively found the environment hostile, she failed to demonstrate that any unwelcome harassment was objectively so pervasive as to alter the terms and conditions of her employment. While Louder alleged Morrison made racial comments to her that she found offensive, these remarks were not frequent or severe enough to constitute a hostile work environment. *See Mendoza*, 195 F.3d at 1246. There is also no indication these comments were meant to harass Louder because of her race. Furthermore, Louder presented no evidence that any of the harassment she perceived interfered with her job performance. Thus, the district court did not err

---

[1]The Supreme Court recently decided that to constitute an adverse employment action in the retaliation context, an employer's challenged action must have been "material" to a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). For purposes of the present appeal, we find it unnecessary to address whether *White* applies outside the retaliation context or changes our precedent with respect to hostile work environment, as Johnson is not entitled to relief in any event.

in granting summary judgment in favor of the City on Louder's hostile work environment claim.

4.   *Johnson's disparate treatment and retaliation claims*

For Johnson to establish a claim of disparate treatment stemming from racial discrimination, she must show: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly-situated employees who were not members of her class more favorably; and (4) she was qualified for the job or benefit at issue.  *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005).  To establish a prima facie case of retaliation, Johnson must show:  (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was some causal relationship between the two events.  *Holifield*, 115 F.3d at 1566.

To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001).  Although proof of direct economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  *Id.*  For example, where an employer's allegedly unfounded

9

criticism of an employee's job performance, in the form of job performance memoranda or otherwise, does not constitute a formal reprimand or trigger any tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities or more formal discipline, such criticism is rarely actionable under Title VII. *Id.* at 1242.

Here, the district court did not err in finding Johnson failed to show she suffered an adverse employment action. Johnson, by her own admission, retained the same job title, pay rate, hours, and benefits upon her return from maternity leave. The only change she faced was that she was no longer directly responsible for the upkeep of purchase orders, but was instead backing up other account clerks, including the treasurer. While Johnson contends this change "drastically" diminished her tasks, Faulkner testified that Account Clerk IIs were cross-trained to perform each other's duties and Johnson's position required that she back up other account clerks from time to time. On return from maternity leave, Johnson did what she was originally hired to do—back up the treasurer—but still performed some of her former duties when she helped other employees with purchase orders. Thus, any change in responsibilities upon return from maternity leave did not materially alter her terms and conditions of employment.

Johnson also did not show she suffered an adverse employment action based on the counseling memos in her file regarding time and attendance. Although an adverse employment action does not require a decrease in pay, Johnson did not proffer any evidence that the counseling memos constituted a formal reprimand or triggered any tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities, or more formal discipline. In fact, she received a merit raise despite issues with timeliness and absenteeism. Accordingly, because Johnson failed to show she suffered an adverse employment action to sustain her disparate treatment and retaliation claims, the district court did not err in granting summary judgment for the City on these claims.

5.    *Johnson's constructive discharge claim*

A party cannot amend her complaint to add a new claim through argument in a brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004). Moreover, when a case presents one particular claim and is adjudicated on the basis of that claim, consideration of another claim on appeal may be inappropriate. *See Raytheon Co. v. Hernandez*, 124 S. Ct. 513, 519 (2003) (ruling that disparate impact analysis was inappropriate where only claim properly raised before district court was based on disparate treatment theory).

11

Johnson did not explicitly raise a constructive discharge claim in her second amended complaint, or even allege she resigned from her job or was no longer employed with the City. She first mentioned constructive discharge in her response to the City's motion for summary judgment, and she cannot amend her complaint to add a new claim through argument in a brief opposing summary judgment. *See Gilmour*, 382 F.3d at 1314-15. Furthermore, the magistrate did not mention or rule on the constructive discharge claim, but rather decided Johnson's claims on the basis of hostile work environment, disparate treatment, and retaliation theories. Thus, her claim was not properly before the district court and we need not consider it now. *See Raytheon*, 124 S. Ct. at 519.

6. *Louder's discriminatory discharge and retaliation claims*

Louder did not present direct evidence of racial discrimination, but rather relied on circumstantial evidence, which invoked the burden-shifting framework of *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 101 S. Ct. 1089 (1981). Under this framework, the plaintiff must first show an inference of discriminatory intent by establishing a prima facie case of discrimination. *McDonnell Douglas*, 93 S. Ct. at 1824. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment action. *Id.* If the

12

defendant meets its burden, the plaintiff must then show the proffered reason is merely a pretext for discrimination. *Burdine*, 101 S. Ct. at 1093.

Even assuming Louder established a prima facie case of discriminatory discharge, the City articulated legitimate, non-discriminatory reasons for her termination. The record shows Louder disrupted the workplace on March 10, 2003 when she called Faulkner "Satan in disguise" loudly and in front of several other employees. Louder further admitted to making this comment to Faulkner. She did not, however, rebut the City's proffered reason for her termination, or point to an employee who engaged in similar behavior but was treated more favorably than her. Accordingly, Louder failed to show the reason for her termination was pretextual.

Since Louder relied on the same evidence to support her retaliation claim, the magistrate correctly found her retaliation claim could not survive summary judgment based on the same reasons. This is because even if she established a prima facie case of retaliation, the City provided legitimate reasons for terminating her based on her insubordination. She also did not demonstrate this reason was pretextual. Thus, we affirm the district court's grant of summary judgment in favor of the City on Louder's claims of discriminatory discharge and retaliation.

13

7.      *Collective pattern and practice claim*

Pattern and practice claims under Title VII require proof of discriminatory intent, which requires more than just mere occurrences of isolated or accidental discriminatory acts. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273, 1286-87 (11th Cir. 2000). "[I]n a pattern and practice case, the plaintiff[s] must prove, normally through a combination of statistics and anecdotes, that discrimination is the company's standard operating procedure." *Id.* at 1274 (quotation omitted).

Appellants did not meet their burden of showing discrimination was the City's standard operating procedure. Appellants presented neither statistical evidence nor facts to support their pattern and practice claim, but rather conclusorily argued the isolated incidents that each of them experienced demonstrated a standard operating procedure of discrimination. Furthermore, as noted above, none of the incidents Appellants alleged rise to the level of a Title VII or § 1981 violation. Thus, the district court did not err in granting summary judgment in favor of the City on the pattern and practice claim.

B.      *Louder's state law assault claim*

We review the exercise of supplemental jurisdiction for abuse of discretion. *Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997). "[I]n any civil action of which the district courts have original jurisdiction, [they also] have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . (3) the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). When a court declines to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court. *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999).

As an initial matter, we cannot, as Louder requests, exercise supplemental jurisdiction over her state law assault claim in the first instance because district courts have the power to exercise supplemental jurisdiction, not appellate courts. To the extent Louder argues the district court abused its discretion in failing to exercise supplemental jurisdiction, her claim lacks merit because all her federal claims were due to be dismissed. *See* § 1367(c). Although she argues she can no longer bring her claim in state court because the applicable statute of limitations has run, this argument is meritless. The district court clearly apprised her of her opportunity to refile in state court and the statute of limitations' tolling period, and

15

appropriately dismissed her assault claim without prejudice. Thus, the district court did not abuse its discretion in dismissing Louder's state law claim.

### III. CONCLUSION

In conclusion, we affirm the district court's decision because Appellants did not establish any violation under Title VII or § 1981. They further did not establish the City engaged in a pattern and practice of racial discrimination. Because all federal claims were due to be dismissed, the district court did not err in refusing to exercise supplemental jurisdiction over the remaining state law claim.

**AFFIRMED.**