[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 27, 2007
THOMAS K. KAHN
CLERK

No. 07-11643
Non-Argument Calendar
_____

D. C. Docket No. 03-01570-CV-SLB-S

EGBERT J. DACOSTA,

Plaintiff-Appellant,

versus

BIRMINGHAM WATER WORKS & SEWER BOARD,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 27, 2007)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Egbert DaCosta appeals the district court's grant of summary judgment in

his employment discrimination action alleging race and national origin

discrimination and retaliation, pursuant to Title VII and 42 U.S.C. §§ 1981 and

1983.[1] For the reasons that follow, we affirm.

## I. Background

DaCosta was hired by Birmingham Waterworks and Sewer Board ("BWW")

in 1997 as a Computer Operator A, a position which he continued to hold at the

time of his lawsuit. In 1999, he complained to the department manager that his

supervisor Greg Singleton and co-worker Jesse Inman were discriminating against

him by calling him "immigrant," "foreigner," and asking if DaCosta needed them

to "show him how it's done in this country." Although Inman and Singleton

apologized for the comments, DaCosta believed that he was retaliated against as a

result of his complaint, and that he was discriminated against on the basis of his

race and national origin. He identified the following adverse employment actions:

he was forced to take out the trash and do manual labor, which other employees

were not required to do; he was placed on the night shift for a longer period of time

than the usual rotation; he was instructed to bring in a doctor's note when he

requested sick leave; he received lower evaluations; and he was denied

_____

[1] DaCosta's race is Indian, and his national origin is Asian. DaCosta initially included claims of gender and age discrimination, but he later conceded that he could not establish those claims. Discrimination claims under § 1981 are analyzed in the same manner as claims under Title VII. Standard v. A.B.E.L. Services, 161 F.3d 1318, 1330 (11th Cir. 1998).

opportunities to obtain further training that would have made him eligible for promotions.

DaCosta filed two charges of discrimination with the EEOC. He then filed the current civil rights complaint against BWW, which BWW moved to dismiss as untimely. The court denied the motion, but limited DaCosta's claims to those arising 180 days before DaCosta filed the second EEOC charge, which was September 15, 2002. BWW then moved for summary judgment.

The district court granted summary judgment, considering two instances of protected activity for purposes of the retaliation claims: the 1999 complaint letter and the EEOC charges. The court first determined that the alleged employment actions were not adverse actions, as they were not serious and material changes to the terms and conditions of employment, and there was no evidence other employees were treated differently. The court found, moreover, that DaCosta had not shown any causal connection because he was denied training in 2001, more than three years after he complained of discrimination. The court further found that, even if DaCosta established a prima facie showing of retaliation, he could not show that BWW's legitimate non-discriminatory reasons for its decisions were a pretext for retaliation. With respect to the 2002 and 2003 EEOC charges, the court concluded that there was no causal relationship between the alleged adverse

3

actions and the employment decisions. Finally, the court found that summary judgment was proper on the discrimination claims because there was no adverse action, and even if there was, DaCosta had not shown that BWW's legitimate non-discriminatory reasons were pretextual. DaCosta now appeals.

## II. Analysis

DaCosta first argues that he established a causal connection between the employment decisions and his protected activities because, after he complained in 1999, he was denied educational opportunities and training, and only a few months elapsed between his EEOC charges and a reduction in overtime hours.[2] DaCosta next argues that he established a prima facie showing of discrimination because he suffered adverse employment actions and similarly situated employees who were not in his protected classes were treated more favorably.

BWW responds that DaCosta's claims were untimely and it notes that the district court limited the issues to those arising after September 15, 2002. It then addresses the retaliation and discrimination claims together, asserting that DaCosta did not suffer an adverse employment action.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich

---

[2] DaCosta raises the reduction of overtime as an adverse action for the first time before this court. Therefore, we will not consider it. Narey v. Dean, 32 F.3d 1521, 1526-27 (11th Cir. 1994).

4

v. Thorton, 280 F.3d 1295, 1299 (11th Cir. 2002).  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

A. Retaliation

Title VII prohibits retaliation by an employer against an employee because the employee has opposed an unlawful employment practice "or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff may establish his case through circumstantial evidence, using the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  See EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002).  Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action,[3]

---

[3]  In Burlington N. & Santa Fe Ry. Co. v. White, --- U.S. ----, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court identified this second prong as "a materially adverse employment action."

and (3) there was some causal relation between the two events.[4] <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001).

To establish the second prong, the employee must show that "a reasonable employee would have found the challenged action materially adverse." <u>Burlington N. & Santa Fe Ry. Co.</u>, 126 S.Ct. at 2415.

The plaintiff can show a causal connection by presenting evidence that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." <u>Shannon v. Bellsouth Telecomm., Inc.</u>, 292 F.3d 712, 716 (11th Cir. 2002) (citation and quotation marks omitted). We construe the causal link element broadly. <u>Pennington</u>, 261 F.3d at 1266. Although close temporal proximity can indicate causation, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001).

---

[4] Once a plaintiff has made a prima facie showing of discrimination, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094-95 (1981). If the defendant articulates a legitimate, non-discriminatory reason, the plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were pretextual. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997).

6

Here, DaCosta identified the following adverse actions: (1) loss of prestige; (2) the requirement that he bring in a doctor's note when ill; (3) lower employment evaluations; (4) a pattern of abusive comments; and (5) the failure to train him.

Under the more broadly construed concept of adverse action, only the lower evaluations and failure to train could be considered materially adverse employment actions. Furthermore, the facts of the case do not support DaCosta's claims. DaCosta has not identified how his evaluations prevented him from receiving any promotions or any loss of salary. See Brown v. Snow, 440 F.3d 1259, 1265-66 (11th Cir. 2006) (holding that "[a] lower score on [an employee's] performance evaluation, by itself, is not actionable under Title VII unless [the employee] can establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities"; concluding plaintiff failed to assert adverse employment action, where he failed to establish a connection between the lower score and his lack of promotion); Gillis v. Georgia Dept. of Corrections, 400 F.3d 883, 888 (11th Cir. 2005) (holding that "an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII" (emphasis added)).

Even if the conduct identified would qualify as an adverse action, neither is causally connected to DaCosta's 1999, 2002, or 2003 protected activities. The

7

lower evaluations occurred in 2004 and 2005, more than a year after the last EEOC charge. As such, DaCosta has not shown any causal connection.[5] Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001).

Nor can DaCosta show any connection with respect to the failure to train. He has not identified any class he sought access to at a specific time, so there is no way to determine whether the refusal was in any way connected to his complaints.

B. Discrimination

DaCosta seeks to satisfy his prima facie burden by showing: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action;[6] and (4) he was treated less favorably than a similarly-situated individual outside her protected class. Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla., 342 F.3d

---

[5] Additionally, DaCosta cannot show any causal connection between the alleged abusive comments and the employment decisions. The 1999 comments are too remote in time to connect to the 2004 and 2005 employment decisions.

[6] We further note that the broader view of adverse employment actions taken by the Supreme Court in Burlington N. & Santa Fe Ry. Co. appears limited to retaliation cases and does not alter this court's precedent in discrimination actions. See Burlington N. & Santa Fe Ry. Co., 126 S.Ct. at 2414. Thus, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). To prove an adverse employment action "an employee must show a serious and material change in the terms, conditions, or privileges of employment." Id.

1281, 1289 (11th Cir. 2003).

Here, DaCosta could not show that similarly situated employees were treated more favorably, or that he was qualified for either of the positions he sought. DaCosta conceded that he did not have the experience or certifications to qualify for the IT Analyst position given to Pete Davis. And the record reflects that he did not have the education or certifications Rhonda Lewis had obtained before she was promoted to the IT Support position. As such, he was not similarly situated with Davis and Lewis, nor was he qualified for the positions.

Even if he can establish a prima facie case, he cannot rebut BWW's reasons for its employment decisions. DaCosta had not completed the classes and certification tests necessary for the positions involved. And his evaluations identified what classes he needed to take. Moreover, the company policy outlined the procedure for education opportunities. DaCosta has not shown that he was singled out or treated less favorably than other employees outside the protected classes.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.