[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2009
THOMAS K. KAHN
CLERK

No. 09-10350
Non-Argument Calendar
_____

D. C. Docket No. 06-01699-CV-MHS-1

LEROY HILL, JR.,

                                                    Plaintiff-Appellant,

versus

EMORY UNIVERSITY,
EMORY HEALTHCARE, INC.,
d.b.a. Emory Winship Cancer Institute,
DEDRA F. CANTRELL,
a.k.a. Dedra Frutchey,
SANDRA MURDOCK,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 25, 2009)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Leroy Hill, Jr., appeals the district court's grant of summary judgment in favor of his employer, Emory University and Emory Healthcare, Inc. ("EHC"), which operated the Emory Winship Cancer Institute, ("WCI"), and two of its employees, EHC Chief Information Officer Dedra F. Cantrell and WCI Chief Operating Officer Sandra Murdock, on his claims of termination based on race, in violation of 42 U.S.C. § 1981; termination based on race, retaliation, wage discrimination; and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a); and, a state law claim of negligent retention. He also appeals the court's denial of his motion to compel discovery and the court's subsequent award of attorneys' fees to the defendants, which we will address first.

## I.      Award of attorneys' fees and motion to compel

Hill  argues that the district court's award of attorneys' fees was unwarranted because his motion to compel was substantially justified. The dispute between the parties centered around the breadth of discovery. Hill contends that his work was university-wide in scope because he worked for WCI, but continued to report in part to Cantrell at EHC. Furthermore, Hill argues, the defendants later

2

produced most of the objected-to information. Hill thus contends that a genuine dispute between the parties existed and that the motion was substantially justified.

We review the denial of a motion to compel discovery for an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (citation omitted). We also review a district court's decision regarding sanctions under Federal Rule of Civil Procedure 37 for an abuse of discretion. *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1146-47 (11th Cir. 2006) (citation omitted). A district court abuses its discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous. *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000), *cert. denied*, 532 U.S. 926 (2001) (citation omitted).

Under the Federal Rules of Civil Procedure, a party is permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." FED. R. CIV. P. 26(b)(1). The information sought does not need to be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* District courts can limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit. . . ." FED. R. CIV. P. 26(b)(2)(c)(iii). Under Rule 37, a party may move to compel disclosure under Rule 26, and "[a] party seeking discovery may move for an order

3

compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(A), (B). When such motion is denied, the court "must . . . require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(B). However, the court should not order payment "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.* "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) (citation omitted).

Hill has not established any abuse of discretion in the denial of his motion to compel discovery or in the award of attorneys' fees because he did not challenge the district court's conclusion that several of his requests were difficult to interpret and improperly worded. Therefore, he has not shown that his motion was substantially justified.

## II. Discriminatory termination claim

Hill argues that the district court erred in granting summary judgment on his § 1981 and Title VII discriminatory termination claims because he believes that the court required him to produce direct evidence of discrimination in order to meet his burden. Although he concedes that he "did not necessarily produce any direct

4

evidence" of discrimination, he argues that the coincidental events surrounding his termination could lead reasonable jurors to conclude that he was terminated and not considered for retention because of his race. In support, Hill cites: (1) the rapid rise of Cindy Hubbard, a Caucasian woman; (2) the defendants' acknowledgment that his termination was not based on performance; and (3) the defendants' refusal to reabsorb him into a different position after he was terminated as they had done for others. Furthermore, Hill argues that he established that the defendants' proffered reasons for his termination were pretextual because Hill worked on several projects beyond the development of the GeneSys SI ("GSI") program, which was the main program he was hired to develop, including many projects initially assigned to Hubbard that were all reassigned to Hubbard when he was terminated. He also emphasizes his belief that the WCI account consistently had a budget surplus. Hill relies on the same evidence in arguing that the district court erred in granting summary judgment to the defendants on his retaliation claim.

We review a district court's grant of summary judgment *de novo*, viewing all evidence in a light most favorable to the non-moving party. *Martin v. Brevard County Pub. Schs.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (per curiam) (citations omitted). Summary judgment is appropriate when there is no genuine issue of material fact, thereby entitling the movant to judgment as a matter of law. FED. R.

5

CIV. P. 56(c). Summary judgment should be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Additionally, a mere scintilla of evidence is not enough to survive summary judgment; a plaintiff must present enough evidence to enable a reasonable jury to find for her by a preponderance of the evidence. *Shotz v. City of Plantation*, 344 F.3d 1161, 1184 (11th Cir. 2003).

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1). Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000), *cert. denied*, 534 U.S. 815

6

(2001) (citation omitted).

To establish a *prima facie* case of the discriminatory elimination of a position under Title VII, a plaintiff may show "(1) that [he] was in a protected [class] and was adversely affected by an employment decision, (2) that [he] was qualified for [his] current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate . . . in reaching that decision." *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003) (per curiam) (internal quotation marks and citation omitted). To establish intent, a plaintiff needs to proffer evidence that could lead a fact finder to conclude that "(1) [the] defendant consciously refused to consider retaining a plaintiff because of his [race], or (2) [the] defendant regarded [race] as a negative factor in such consideration." *Allison v. W. Union Tel. Co.*, 680 F.2d 1318, 1321 (11th Cir. 1982) (citation omitted).

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this [subchapter], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [subchapter]." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an

7

adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted). The causal connection prong requires a plaintiff to show "that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008), *cert. denied*, 129 S. Ct. 404 (2008) (internal quotation marks, alterations, and citations omitted). A causal connection can be established by the close temporal proximity between the protected activity and the adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (citation omitted).

When a plaintiff uses circumstantial evidence in an attempt to prove discrimination or retaliation under Title VII, we apply the burden shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under the *McDonnell Douglas* framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination, which, if sustained, creates a presumption that the employer discriminated against the plaintiff. *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1162 (11th Cir. 2006) (citations omitted).

If the plaintiff establishes a *prima facie* case, the burden of production shifts

to the employer to provide a legitimate, non-discriminatory reason for the action taken, which rebuts the presumption of discrimination. *Id.* If such a reason is presented, the plaintiff must establish that the employer's reason is a pretext for unlawful discrimination. *Id.* Despite the shifting of burdens of production, the ultimate burden to prove intentional discrimination remains with the plaintiff. *Id.*

In order to demonstrate pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks and citation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citations and footnote omitted). To survive summary judgment, "a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Id.* at 1037. A plaintiff can establish pretext by demonstrating "such weaknesses, implausibilities,

9

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045 (1998) (internal quotation marks and citation omitted).

Here, the record showed that both WCI and the Woodruff Fund, from which Hill was paid, were running budget deficits; the program that Hill was hired to develop had moved into a maintenance phase that required less of Hill's time and was handled primarily by an outside vendor; and, Hill's remaining job duties were shared among lower-earning employees after his termination. Hill did not show that these stated reasons for his termination were pretextual. Therefore, Hill did not establish that the district court erred in granting summary judgment to the defendants on his termination or retaliation claims.

## III. Wage discrimination

Hill also argues that he established a *prima facie* case of wage discrimination because the two employees he identified, Hubbard and Michael Graiser, who are both Caucasian, were similarly situated to him. Hill notes that he was assigned almost all of Hubbard's projects in June 2004, thereby performing identical job duties for much lower pay raises. Furthermore, when Hubbard was promoted to

10

director, they shared a job title and reported to the same supervisor. Both Hill and Hubbard established and managed a budget, served as technical experts to clients, oversaw the administration of GSI data, and supervised a staff of professionals. In addition, Hill asserts that he was similarly situated with Graiser because both "used users, technologies, vendors" and "did some of the same work."

In order to establish a *prima facie* case of intentional compensation discrimination based on race, the plaintiff must establish that: (1) he belongs to a racial minority; (2) he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage. *See MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991) (discussing wage discrimination in the ADEA context). We have held that the denial of a pay raise can constitute an adverse employment action that affects a plaintiff's compensation. *Gillis v. Ga. Dep't of Corrs*., 400 F.3d 883, 887 (11th Cir. 2005). We have held that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.*" Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091 (11th Cir. 2004).

Hill failed to establish a *prima facie* case of wage discrimination because he did not establish the presence of any similarly situated comparators. The record

11

demonstrates that both Hubbard's and Graiser's jobs involved different responsibilities than Hill's job. Furthermore, both Hubbard and Graiser received salary increases when they presented their employer with evidence of a competing offer of employment. In contrast, Hill never received a competing offer of employment. Therefore, Hill, Hubbard, and Grasier were not "similarly situated in all relevant respects." *Id.* (internal quotation marks and citation omitted). We find no error in the district court's grant of summary judgement to the defendants on Hill's wage discrimination claim.

## IV. Hostile work environment

Hill further contends that the district court erred by granting summary judgment to the defendants on his hostile work environment claim because he established that he experienced severe and pervasive harassment. Hill argues that he experienced an unbroken chain of harassment that included: (1) a department-wide "pulse check" to gauge morale, which resulted in a referral to a counseling session for his workgroup; (2) a demotion in job title from director to manager while at EHC; (3) the repeated denial of his requests for supporting office staff; (4) the fact that one of his hiring decisions was denied, with Hubbard being hired instead; (5) the denial of his request to attend an educational conference; (6) failure to classify him as a regular WCI employee instead of a "chargeback" employee

12

associated with EHC; (7) the failure to assign him any direct reports; (8) the failure to assign him office space; (9) the failure to award him pay raises comparable to Hubbard and Graiser; (10) the failure to reabsorb him after his job was terminated or provide him with a list of available job openings; and (11) the termination of his employment.

To establish a hostile work environment claim pursuant to Title VII, a plaintiff must prove "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotation marks and citation omitted). The employee has the burden of proving a hostile work environment claim. To establish such a claim, a plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic . . . such as [race]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Id.* at 1275 (citation omitted). The requirement that the

13

harassment be "severe or pervasive" contains an objective and subjective component. *Id.* at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] to be abusive." *Id.* (internal quotation marks, alterations and citation omitted).

In evaluating the objective severity of the harassment, we look at the totality of the circumstances and consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* We agree with the district court that the employment actions cited by Hill were not so objectively severe or pervasive as to alter the terms and conditions of his employment. Although he may have been subjectively humiliated, Hill's cited actions are objectively neither threatening nor humiliating. Therefore, the district court did not err in granting summary judgment to the defendants on Hill's hostile work environment claim.

## V.    State negligent retention claim

Finally, Hill argues that his state negligent retention claim should be allowed to proceed because he persistently complained to human resources, WCI's

14

Executive Director Jonathan Simons, Murdock, and others about the discrimination, but they failed to act to correct it. However, his Georgia law negative retention claim is an "essentially derivative" claim that survives summary judgment only if the substantive claims on which it was based also survive. *See Phinazee v. Interstate Nationalease, Inc.,* 514 S.E.2d 843, 846 (Ga. Ct. App. 1999). Here, the district court properly granted summary judgment to the defendants on Hill's derivative state negligent retention claim because summary judgment was appropriate for the other substantive claims.

## VI.   Conclusion

Upon thorough review of the record and the parties' briefs, we discern no reversible error. Accordingly, we affirm.

**AFFIRMED.**